[No. B034015. Second Dist., Div. Four. Oct. 19, 1988.]

GREAT-WEST LIFE ASSURANCE COMPANY, Plaintiff and Appellant, v.
GUARANTEE COMPANY OF NORTH AMERICA, Defendant and Respondent.

**COUNSEL**

Adams, Duque & Hazeltine and Rex Heeseman for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Douglas M. Moore, Jr., and David E. Wood for Defendant and Respondent.

**OPINION**

**GEORGE, J.**—The Great-West Life Assurance Company, a Canadian corporation, filed an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of statutory duties against respondent The Guarantee Company of North America, also a Canadian corporation, in connection with a bond issued by respondent purportedly insuring appellant for losses occurring at its offices in Canada, California, and other areas of the United States. Respondent successfully moved to quash service on respondent on the ground the superior court lacked personal jurisdiction. Appellant appeals from the order (judgment) dismissing the action, contending the court had personal jurisdiction over respondent, and therefore the motion was improperly granted. For the reasons discussed below, we affirm the judgment (order of dismissal).

## FACTUAL AND PROCEDURAL HISTORY

The complaint, declarations and other evidence upon which the motion to quash service of summons was heard reveal the following. Appellant is a Canadian stock insurance company, incorporated under the laws of Canada, maintaining its head office and principal place of business in Manitoba, Canada. Its United States headquarters are located in Colorado and it is authorized to do business and is doing business in California. A significant portion of its premium income is generated in the United States, where it maintains numerous offices, agents and employees, in California and other states. Appellant's annual report disclosed that for the year 1980, 48 percent of its total sales and 54 percent of its premium income derived from the United States.

Respondent is a corporation organized to do business in Canada, maintaining its head office in Quebec, Canada. Respondent issues bonds and other insurance which provide coverage for losses arising out of occurrences in Canada and in the United States. Respondent has not been authorized or incorporated to do business in California since 1968; has designated no agent for service of process in California; has not maintained an office, bank account, telephone listing or mailing address in California; has not owned, rented, leased or held any interest in any real property in California; has not employed any California residents as employees or agents to conduct business on its behalf; has not filed any state or federal income tax returns; and has not maintained on a continuous basis any employee, agent, office or facility in California or in the United States for the purpose of investigating insurance claims originating there.

From time to time, respondent has employed independent adjustors to evaluate automobile claims in the United States. Respondent occasionally employed investigators to seize property at various locations throughout the world pursuant to an assignment of rights clause in its insurance bonds giving it a right of action against third parties. On three occasions over several years, respondent's representatives visited California for the purpose of handling claims.[1] Some of the Canadian companies respondent insured had subsidiaries located in the United States.

Another defendant (not a party to this appeal), The Continental Insurance Company, a New Hampshire company, also issues bonds and insurance for losses arising out of occurrences in the United States.

---

[1] We decline to take judicial notice of a declaration filed in a similar but unrelated case involving respondent's operations, and referred to in appellant's opening brief, because it is not apparent from the record whether the trial court took judicial notice of that declaration.

In 1977, Continental issued a "blanket bond," insuring certain entities including appellant. In 1982, appellant's "blanket bond" coverage was replaced by a similar type of "blanket bond" issued by respondent. Under the terms of respondent's insurance policy, appellant was insured for loss resulting directly from any dishonest or fraudulent act of its employees or general agents "committed anywhere." The bond covered all losses, including property and policyholders' funds, at any of appellant's offices, encompassing those in Los Angeles and other locations in California, as well as elsewhere in the United States and Canada. By its terms, respondent indemnified appellant against court costs and attorney's fees incurred in defending any suit brought against appellant, and respondent could elect to conduct the defense of such a suit in the insured's name, through attorneys it selected. Pursuant to the bond's "Assignment of Rights" provision, upon respondent's payment of any loss for which an agent was liable to appellant, appellant's rights against the agent would be assigned to respondent.

Appellant provided respondent with information as to the number and location of appellant's offices in California. It also provided information establishing that a preponderance of its business was generated through its offices in the United States.

The bond was signed and issued at respondent's office in Ontario, Canada, and was delivered to Canadian insurance brokers representing appellant. All negotiations leading up to the issuance of the bond were conducted in Canada, and all premiums were remitted to respondent in Canada, in Canadian dollars.

Appellant employed an agent, Richard Rausch, at one of its offices in the Los Angeles area. In late 1982, Rausch apparently committed suicide, and shortly thereafter, appellant, through its Canadian insurance brokers, reported to respondent and Continental potential claims under both bonds based on certain "discrepancies" it had discovered in Rausch's business activities. In 1983, several California residents filed two separate actions in Los Angeles County alleging that Rausch had defrauded them and that appellant implicitly approved or negligently permitted Rausch's conduct. Appellant settled with those plaintiffs, as to its own liability, for several hundred thousand dollars, and the actions against the Rausch estate were assigned to appellant. Appellant notified respondent and Continental that appellant was making a claim under each of the bonds based on appellant's losses incurred in connection with the settlements and related attorney's fees and costs. Continental denied the claim, asserting the fraudulent acts of the agent occurred after the period covered by its bond. Respondent acknowledged that part of the claim it considered to have occurred during the

period of its coverage and denied the remainder of the claim.[2] Thereafter, appellant filed the subject action.

Respondent moved to quash service of the summons due to lack of personal jurisdiction. The motion was granted, and the action was dismissed. Appellant filed a timely appeal.

## DISCUSSION

## I

## STANDARD OF REVIEW

When the evidence of jurisdictional facts is not conflicting, "the question of whether defendant is subject to personal jurisdiction is one of law." (*Felix* v. *Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 111 [241 Cal.Rptr. 670].) In such a case, the lower court's determination is not binding on the reviewing court. (*Long* v. *Mishicot Modern Dairy, Inc.* (1967) 252 Cal.App.2d 425, 427-428 [60 Cal.Rptr. 432].) While the parties at times contested each other's characterization of the facts, the evidence presented by each side was not in conflict. We therefore engage in an independent review of the record.

## II

## JURISDICTIONAL REQUIREMENTS

Under Code of Civil Procedure section 410.10, California's long-arm statute, a California court may exercise jurisdiction over a nonresident defendant "on any basis not inconsistent with the Constitution of this state or of the United States." "[T]he United States Supreme Court has defined the parameters of the power of the states to compel nonresidents to defend suits brought against them in the state's courts. [Citations.]" (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) In personam jurisdiction is of two types, general and limited. (*Id.*, at pp. 147-148.) The parties agree that because respondent's activities in this state are not "extensive or wide-ranging" or "substantial, continuous and systematic" such as to warrant a finding of general jurisdiction (*ibid.*), the trial

---

[2] Respondent renewed the bond for several years despite its notice of appellant's claim, but in 1987 respondent requested that appellant find another primary bond carrier. The reason given for the request was that appellant by then conducted approximately two-thirds of its business in the United States, and respondent desired to limit its business as an insurer to "basically Canadian risks."

court's order may be reversed only if limited personal jurisdiction has been established.

■ A court may exercise personal jurisdiction over a nonresident defendant so long as the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154]; *Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 108-109 [94 L.Ed.2d 92, 102, 107 S.Ct. 1026].) These minimum contacts must have a basis in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citation.] Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.' [Citations.]" (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. 102, 109 [94 L.Ed.2d 92, 102]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 147.) "[T]he forseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 297 [62 L.Ed.2d 490, 501, 100 S.Ct. 559].)

■ " 'In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum and the litigation[ ]" [citations]' " (*Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 668 [190 Cal.Rptr. 175, 660 P.2d 399]), not the plaintiff, the forum, and the litigation. (*Rush* v. *Savchuk* (1980) 444 U.S. 320, 332 [62 L.Ed.2d 516, 527-528, 100 S.Ct. 571], considering in rem jurisdiction; *World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286, 297 [62 L.Ed.2d 490, 501].) ■ ■ ■ ■ Unilateral activity on the part of the plaintiff " 'cannot satisfy the requirement of contact with the forum State.' " (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* at p. 298 [62 L.Ed.2d at p. 502].)[3]

---

[3] A state has an important interest in providing a forum for its *residents,* and California's legitimate interests in a dispute are diminished where the plaintiff is not a California resident. (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. 102, 114 [94 L.Ed 2d 92, 106].) In *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199], the United States Supreme Court concluded the California court properly exercised personal jurisdiction even though the foreign (Texas) insurance company had no offices or agents in California and apparently had never solicited or done any insurance business in California apart from the policy involved, in view of California's manifest interest in protecting the rights of California residents when their insurers refuse to pay their claims, because the insurance con-

To establish that respondent had sufficient minimum contacts in the present case, appellant relies on the following circumstances: the bond provided coverage as to the activities of employees and agents in all of appellant's offices, including those located in California; respondent issued and renewed the bond with knowledge appellant had significant operations in the United States and more offices in California than in any other state, and one member of its board of directors was from San Francisco; respondent accepted premiums partially attributable to coverage of the California activities of appellant's employees and agents; and respondent renewed the subject bond after learning of the claim based upon losses occurring in California.

As observed in *A.I.U. Ins. Co.* v. *Superior Court* (1986) 177 Cal.App.3d 281, 287 [222 Cal.Rptr. 880], "[a]lthough there are many decisions applying the 'minimum contacts' test to manufactured products [citation], decisions concerning insurance contracts are scarce." Appellant relies on this and another California case for the proposition that respondent's knowledge of appellant's in-state activities in supplying it with coverage for agents' or employees' dishonest acts committed anywhere, and its derivation of premium income partially attributable thereto, support the assertion of jurisdiction over a foreign insurer.

In *McClanahan* v. *Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 [307 P.2d 1023], an Alabama insurer, created under Alabama law and having its principal office in that state, having written no insurance policies and maintaining no office or place of business in California, and having no agents, jobbers or independent contractors soliciting business in this state, issued a policy of automobile insurance to Colombian residents for accidents occurring anywhere in the United States. In that policy, it contracted to defend and indemnify the insureds in the United States, and expressly agreed to submit to an action brought in any state by a third party claimant, in the event a judgment were entered against its insureds. (*Id.*, at pp. 171-172.)

Third party claimants, residents of another state, brought an action against the insurer in California to recover a judgment entered against the insureds arising from an accident occurring in this state. The court held that California had jurisdiction because the insurer expressly had assumed a duty to appear in California to defend such lawsuits: "by the very terms of the policy, it was the defendant insurance company which . . . for all practical purposes became a real party in interest—it took over the com-

tract was delivered in California, the premiums were mailed from there, and the insured plaintiff was a California resident. (*Id.*, at pp. 223-224 [2 L.Ed.2d at pp. 226-227].)

plete control of all aspects of the case from a defense standpoint." (149 Cal.App.2d at p. 174.) In pursuit of this defense, it employed a California adjustment service agency, settled a claim, employed attorneys in this state, and engaged physicians to examine one of the plaintiffs, consistent with assuming control of the case. (*Id.*, at pp. 173-174.)

While *McClanahan* lends support to the notion that an insurer purporting to provide coverage for losses occurring anywhere may be subject to jurisdiction in the state where such a loss occurs, it does so in the context where the insurer chose to *obligate* itself to defend, and assumed a very active role in the defense of the lawsuit. In the present case, respondent had no contractual duty to defend claims, and has remained uninvolved in the defense of any of the claims underlying the present action for bad faith, although by the terms of its bond it has the right (but not the obligation) to take an active role in assuming the defense of a given claim. Nor has respondent expressly contracted to submit to an action in any given state brought by a third party claimant in the event a judgment is entered against its insureds.

In *A.I.U. Ins. Co.* v. *Superior Court, supra,* 177 Cal.App.3d 281, also cited by appellant, the United States Environmental Protection Agency and the states of Colorado and California sued Shell Oil Company to compel its participation in cleaning up a toxic waste site. Shell cross-complained against some 250 insurers, including A.I.U., which with other insurers brought this action against O.I.L., a Bermuda Company with no offices in California. O.I.L. was an offshore liability insurance company formed by 35 oil companies, including Shell. O.I.L. provided worldwide insurance coverage to these oil company "shareholders/policyholders." Three of these thirty-five had their corporate headquarters in California. These California-based oil companies and other O.I.L. "shareholders/policyholders" had substantial assets in California and insured substantial risks in this state. O.I.L. moved to quash service on the basis the court lacked personal jurisdiction.

The court concluded that O.I.L. issued insurance with worldwide coverage and reasonably should have anticipated being sued in this state. It reasoned that the cause of action against O.I.L. arose partially from its forum-related activities, which included insuring Shell's assets and activities in California. O.I.L. also insured three major California-based oil companies and the California operations of numerous other companies, receiving over $145 million in premiums from the California companies, and thus had derived significant economic benefit from insuring California assets and activities. It observed that O.I.L. had much greater reason to expect Cali-

fornia losses than the insurers in *McClanahan,* because O.I.L. insured stationary assets and activities located in California. (177 Cal.App.3d at pp. 290-291.)

The present cause of action arose partially from respondent's forum-related activities involving the insuring of appellant's stationary assets and activities in this state. It was not established that respondent derived significant economic benefit from insuring these California assets and activities, although at least some portion of respondent's premiums was attributable to this coverage. However, in *A.I.U.* the objects of coverage were in-state, and the company seeking to avoid the assertion of jurisdiction was itself partially created and owned by large California oil businesses. Therefore, the court's decision in *A.I.U.* apparently was based in part upon O.I.L.'s major corporate shareholders being California-based. Respondent in the present case does not share this attribute of partial ownership by in-state entities who possess substantial in-state assets. Furthermore, respondent's presence in Canada is not the product of any implicit design to avoid liability in this state or this country.

Appellant cites several federal circuit cases in support of its position. These cases are not binding on this court. While one of these authorities contains language to the effect that insurers simply should structure their policies to limit coverage to specified jurisdictions in order to avoid being haled into court in undesired forums, in that case the plaintiff was a resident of the forum and the insurer had an ongoing presence in the foreign jurisdiction by having maintained in the jurisdiction a general agent for the performance of contractual services. (*Com. of Puerto Rico* v. *SS Zoe Colocotroni* (1st Cir. 1980) 628 F.2d 652, 669-670.) In a federal case from this circuit, an insurance policy's coverage of accidents occurring anywhere within the United States was not a sufficient basis in itself for the court to conclude that the insurer purposefully had availed itself of the privilege of conducting business activities in California. (*Hunt* v. *Erie Ins. Group* (9th Cir. 1984) 728 F.2d 1244, 1247.)

In the present case, respondent clearly is not a resident of this state and did not maintain in-state representatives for the purpose of handling claims or soliciting business in California. Respondent has not obligated itself to defend actions or to indemnify third party claimants in this state. Pursuant to the bond agreement, only appellant (itself not a California resident) had a right to indemnity. It was not established what proportion of respondent's total premiums was derived from insurance of California assets and activities of the present insured or any other insured. Nor was it established what proportion of appellant's assets and activities was represented by its Califor-

nia assets and activities. Other factors, such as the negotiation, execution and performance of the insurance bond and the payment of premiums in Canada, do not support a finding that respondent possessed sufficient minimum contacts with this state to justify the assertion of jurisdiction over respondent.

However, even if we were to conclude respondent did possess such minimum contacts, several other considerations would come into play. ■ "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' [Citation.]" (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 476 [85 L.Ed.2d 528, 543, 105 S.Ct. 2174]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 147.) If it is established that a defendant purposefully has directed his activities at forum residents, the burden shifts to him to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (*Burger King Corp.* v. *Rudzewicz, supra,* 471 U.S. at p. 477 [85 L.Ed.2d at p. 544].) The determination of the reasonableness of the exercise of jurisdiction in each case depends on an evaluation of several factors. "A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' [Citation.]" (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. 102, 113 [94 L.Ed 2d 92, 105].)

■ The burden which would be imposed on respondent were it required to defend a contractual claim in the California courts clearly would be substantial. Furthermore, California has little interest in adjudicating a contractual dispute between two Canadian insurance companies, neither of which is a resident of this state, where the underlying claims of the California residents already have been disposed of and will not be affected by the present litigation. It is doubtful our choice of law rules would dictate that California law be applied in this case. For all of the above reasons, we conclude the lower court properly granted the motion to quash service of summons for lack of jurisdiction.

## DISPOSITION

The order (judgment) is affirmed.

McClosky, Acting P. J., and Goertzen, J., concurred.