[No. D042710. Fourth Dist., Div. One. Feb. 11, 2004.]

In re DANIEL S., a Person Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
LETICIA S., Defendant and Appellant.

COUNSEL

Pierce M. Kavanagh, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gina A. Rippel, Deputy County Counsel, for Plaintiff and Respondent.

Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minor.

OPINION

**HUFFMAN, J.**—Leticia S. appeals the order removing her son, Daniel S., from her custody under Welfare and Institutions Code section 361.[1] Leticia asserts the order must be reversed because she was not properly noticed. She also asserts her due process rights were violated when the court appointed a guardian ad litem for her without proper notice. Although we conclude Leticia was improperly served and the court should not have appointed a guardian ad litem without affording Leticia the opportunity to be heard on the issue of the appointment, both errors are harmless beyond a reasonable doubt. Accordingly, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Leticia is a chronic paranoid schizophrenic. She was supposed to treat her schizophrenia by taking a daily oral medication and a monthly injection.

By June 2003, Leticia had not refilled the prescription for her oral medication since December 2002 and had not received her injection since April 2003. Later in June, she refused to allow family members into her home to see Daniel, who was then nine months old. Although it is not clear from the record, her refusal to let anyone see Daniel for more than one week apparently caused family members to seek assistance from the San Diego County Health and Human Services Agency (the Agency) or the police. Leticia was placed on a section 5150[2] hold because she was considered a danger to herself and others, and Daniel was placed in protective custody.

A social worker attempted to speak to Leticia at the hospital about Daniel's removal, but Leticia's doctor would not let her do so because he believed it would be detrimental to Leticia's mental health. The doctor also would not allow Leticia to appear at the detention hearing.

In mid-July, the social worker was allowed to speak with Leticia. However, she was cautioned that Leticia was not "processing anything," and was "very angry, very agitated[,] and aggressive." Three days later, when the social worker attempted to see Leticia in person, hospital personnel said Leticia's

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise specified.

[2] Section 5150 provides in part: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation."

mental health remained unstable and she was still not "processing anything." Consequently, the social worker contacted Leticia by telephone and advised her of the upcoming jurisdictional and dispositional hearing. Leticia wrote down the place, date, and time of the upcoming hearing, but was very incoherent and agitated. As a result, the social worker terminated the telephone call because she believed Leticia did not comprehend its purpose. Hospital personnel also told the social worker that Leticia would not be allowed to attend the jurisdictional and dispositional hearing if she remained in the intensive care unit, because she was "too much of a risk."

In late July, the court appointed a guardian ad litem for Leticia and continued the jurisdictional and dispositional hearing to allow him an opportunity to speak with her at the hospital. At the August jurisdictional and dispositional hearing, the guardian ad litem and counsel[3] appeared on Leticia's behalf. Counsel presented no evidence on Leticia's behalf and submitted at the hearing. The court made a true finding on the petition and ordered reunification services.

## DISCUSSION

### I. NOTICE

Leticia contends the jurisdictional and dispositional order must be reversed because she was not properly noticed and consequently, the court never obtained jurisdiction over her. She also asserts the court erred when it appointed a guardian ad litem without notice to her.

■ Because the interest of a parent in the companionship, care, custody, and management of his or her children is a compelling one, before depriving a parent of this interest, the state must afford him or her adequate notice and an opportunity to be heard. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351 [96 Cal.Rptr.2d 285].) Notice must be reasonably calculated to apprise the parent of the pendency of the action and afford him or her an opportunity to present any objections. (*Ibid.*)

### A. *Notice of the Detention Hearing*

■ Leticia argues she did not receive proper notice of the detention hearing. Under section 290.1, once a social worker determines a child shall be "retained in custody," he or she must file a dependency petition and serve notice of the hearing to, among others, the mother of the child. (§ 290.1,

---

[3] The court had appointed counsel for Leticia at the detention hearing.

subd. (a)(1).) Notice may be written or oral, but must be given as soon as possible after the filing of the petition. (§ 290.1, subds. (c), (e).)

■ Here, the social worker attempted to speak with Leticia about Daniel's removal the same day she signed the petition, presumably to serve her with notice of the detention hearing.[4] However, Leticia's physician refused to let the social worker speak with Leticia or, we assume, to leave a copy of the petition, because it would be detrimental to Leticia's health. Because the social worker attempted to serve notice but was prevented from doing so by Leticia's physician, there was no due process violation when Leticia did not receive notice of the detention hearing. (See, e.g., *McKenzie v. City of Thousand Oaks* (1973) 36 Cal.App.3d 426, 430 [111 Cal.Rptr. 584] [compliance with procedural statute may be excused when it is "impracticable, impossible[,] or futile" to comply].)

## B. *Notice of the Jurisdictional and Dispositional Hearing*

Leticia contends she did not receive proper notice of the jurisdictional and dispositional hearing because the notice was sent to her home, even though the court and the Agency knew she was in the hospital.

Under the Welfare and Institutions Code, Leticia must receive notice of the jurisdictional and dispositional hearing. (§ 291, subd. (a)(1).) Because Daniel was detained and Leticia was not present at the detention hearing, she had to be noticed either by personal service or by certified mail, return receipt requested. (§ 291, subd. (e)(1).)

Here, the social worker did not personally serve Leticia. Although she attempted to see Leticia, presumably to serve her, she was told that Leticia was not processing anything and was angry and agitated.[5] Although the record does not indicate hospital staff prevented the social worker from seeing Leticia, we infer the social worker did not believe doing so was useful or practical, thereby rendering personal service impossible. The only attempt to serve Leticia by mail was when the court sent her a copy of the minute order from the detention hearing by certified mail. However, this minute order was sent to Leticia at her home address, not at the hospital, even though the record clearly showed Leticia was at the hospital. Leticia, citing to *In re Arlyne A.* (2000) 85 Cal.App.4th 591 [102 Cal.Rptr.2d 109] and *David B. v.*

---

[4] The social worker filed the petition the day after she signed it; consequently, the detention hearing had to be held by the end of the next judicial day. (§ 315.)

[5] As we have noted, the social worker attempted to provide oral notice of the jurisdictional and dispositional hearing by telephoning Leticia on July 17, 2003, and telling her the date, time, and location of the hearing. Leticia wrote down the information, but the social worker believed she had not comprehended it.

*Superior Court* (1994) 21 Cal.App.4th 1010 [26 Cal.Rptr.2d 586], asserts this service was insufficient because the Agency and the court knew she was hospitalized and not at home. Neither case aids our analysis because neither addresses service to a person who has a mental illness that renders him or her incapable of comprehending notice.[6]

█ The issue presented here is whether Leticia's significant mental illness eliminated the duty to provide notice to Leticia at her actual location. We believe the court and the Agency did not have to serve Leticia with notice, given her mental state, but had to provide Leticia's temporary conservator[7] with notice of the proceedings.[8] In drawing this conclusion, we are guided by Code of Civil Procedure section 416.70, which addresses service of summons on a conservatee. We recognize dependency proceedings are special proceedings governed by their own rules and statutes. (§ 300 et seq.; Cal. Rules of Court, rule 1440 et seq.) We also recognize rules applicable to civil cases are not applicable to dependency actions unless expressly made so (*In re Angela R.* (1989) 212 Cal.App.3d 257, 273 [260 Cal.Rptr. 612]; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759]), and there is no provision in the Welfare and Institutions Code adopting Code of Civil Procedure section 416.70. However, because that section is the only legislative provision we have located on the subject of service to an incompetent person for whom a conservator has been appointed, we appropriately look to it for guidance. (See *Williams v. Superior Court* (1993) 5 Cal.4th 337, 352 [19 Cal.Rptr.2d 882, 852 P.2d 377].)

█ Code of Civil Procedure section 416.70 provides: "A summons may be served on a person (other than a minor) for whom a guardian, conservator, or similar fiduciary has been appointed by delivering a copy of the summons and of the complaint to his guardian, conservator, or similar fiduciary and to such person, but, for good cause shown, the court in which the action is pending may dispense with delivery to such person." Here, Leticia's mental state constituted sufficient good cause to dispense with delivery to her. However, because she had a temporary conservator, service should have been

---

[6] In *In re Arlyne A.*, the court reversed the jurisdictional and dispositional orders because the department of social services ignored information about the appellant's current whereabouts and instead provided notice to the appellant at a five-year-old address. (*In re Arlyne A., supra*, 85 Cal.App.4th at pp. 598–600.) In *David B.*, the court reversed the judgment terminating parental rights because the department of social services had not made reasonable efforts to locate the father even though it had information that would have enabled it to do so. (*David B. v. Superior Court, supra*, 21 Cal.App.4th at p. 1016.)

[7] At some point before July 17, 2003, a temporary conservatorship was established for Leticia.

[8] Once the conservator is served, he or she can choose whether to share the notice with the conservatee.

made on that person. Accordingly, Leticia was not properly notified of the jurisdictional and dispositional hearing.

## C. *Notice To Appoint the Guardian Ad Litem*

Leticia asserts the court violated her due process rights by appointing a guardian ad litem without notice to her. She also asserts the court could not properly appoint a guardian ad litem until she was properly served with notice of the dependency petition.

■ In any proceeding in which an incompetent person is a party, that person shall appear by a guardian ad litem appointed by the court in which the action is pending. (Code Civ. Proc., § 372.) The appointment of a guardian ad litem for a parent in a dependency proceeding is significant because the effect of such an appointment is to remove the control of litigation from the parent. (*In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1186–1187 [113 Cal.Rptr.2d 714].) Consequently, the parent's due process rights must be protected before a guardian ad litem is appointed. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 667–668 [104 Cal.Rptr.2d 909].) Those rights are satisfied if the parent consents to the appointment of a guardian ad litem or, if the parent does not consent, the court holds an informal hearing in which the parent has an opportunity to explain why a guardian ad litem is not required. (*Id.* at pp. 668, 671.) Further, the court may not appoint a guardian ad litem until the party has been properly served. (*Briggs v. Briggs* (1958) 160 Cal.App.2d 312, 318 [325 P.2d 219].)

■ There is no evidence Leticia consented to the court's appointment of a guardian ad litem or was allowed an opportunity to state her position about the appointment of a guardian ad litem for her. Further, as discussed above, Leticia was not properly served with a copy of the petition. Thus, the court should not have appointed a guardian ad litem.

## II.  PREJUDICE

■ Having concluded Leticia was not properly notified of either the jurisdictional and dispositional hearing or the hearing to appoint a guardian ad litem and the guardian ad litem was improperly appointed, we turn to the question of whether these orders warrant reversal. Errors in notice do not automatically require reversal. (*In re Angela C.* (2002) 99 Cal.App.4th 389, 393–394 [120 Cal.Rptr.2d 922].) We review such errors to determine whether

they are harmless beyond a reasonable doubt. (*Id.* at pp. 392–395; *In re Sara D., supra,* 87 Cal.App.4th at p. 673.)[9]

■ The failure to notice Leticia about the hearing to appoint a guardian ad litem is harmless beyond a reasonable doubt. A guardian ad litem is appropriate when a parent is unable to understand the consequences of the proceeding and is unable to assist in the preparation of his or her case. (*In re Jessica G., supra,* 93 Cal.App.4th at p. 1186.) Although Leticia argues reversal is required because there is no evidence she was unable to cooperate with her attorney, the record does not support her contention. At the time of the jurisdictional and dispositional hearing, Leticia was unable to "process anything." She was agitated, angry, aggressive, and unstable, despite being on medication. She was in intensive care and was not allowed to attend the jurisdictional and dispositional hearing because she was "too much of a risk." She was unable to comprehend what the social worker was telling her during a telephone call one month before the hearing. This call occurred five days before the court appointed the guardian ad litem.

■ Moreover, the court could not delay holding the hearings to appoint the guardian ad litem or to determine whether Daniel was a person described by section 300 and should be removed from Leticia's care for an unlimited time. (See, e.g., *D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 513 [4 Cal.Rptr.3d 10].) Time is of the essence in dependency matters (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1409 [126 Cal.Rptr.2d 571]), because childhood does not wait for the parent to become adequate (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826]). Further, children in protective custody have an interest in the prompt resolution of their custody status. (*D.E. v. Superior Court, supra,* 111 Cal.App.4th at p. 513.) Once the petition is filed, a detention hearing must be held no later than the expiration of the next judicial day. (§ 315.) After the child is detained, the court must hold a jurisdictional hearing within 15

---

[9] We recognize this court, in *In re Christina B.* (1993) 19 Cal.App.4th 1441, 1454 [23 Cal.Rptr.2d 918], stated a prejudice analysis was not required when the right to the jurisdictional and dispositional hearing had been waived by the guardian ad litem. However, the mother in *In re Christina B.* was present at the hearing at which the guardian ad litem was appointed and her mental illness apparently did not require hospitalization during the relevant time period. (*Id.* at pp. 1444–1449.) There was also no evidence she was incapable of expressing her wishes or exercising her judgment to waive her rights; to the contrary, she objected to the guardian ad litem's actions at the jurisdictional and dispositional hearing. (*Id.* at p. 1454.) Leticia, however, was hospitalized because of her mental illness and was not able to meaningfully communicate or exercise her judgment to waive her rights. Her physician refused to allow her to be noticed of the detention hearing and refused to allow her to attend either that hearing or the jurisdictional and dispositional hearing. Under those very limited circumstances, a prejudice analysis is appropriate.

judicial days of the detention hearing.[10] (§ 334.) The dispositional hearing may not be held more than 60 days after the detention hearing unless exceptional circumstances exist and may not, under any circumstances, be held more than six months after the detention hearing. (§ 352, subd. (b).) Given these strict time lines, neither the court nor the Agency could wait for an indefinite period of time for Leticia to sufficiently regain her mental faculties to be able to appreciate notice of the jurisdictional and dispositional hearing or the hearing to appoint a guardian ad litem. (See *In re Christina B., supra,* 19 Cal.App.4th at p. 1451, fn. 4.)

■ The error in not providing notice to Leticia's temporary conservator, which voided the appointment of the guardian ad litem (*Weisfeld v. Superior Court* (1952) 110 Cal.App.2d 148, 152 [242 P.2d 29]), is also harmless beyond a reasonable doubt because the result of the jurisdictional and dispositional hearing would have been the same regardless of whether proper notice was given or whether a guardian ad litem was appointed. There was simply no defense to the petition and no alternative but to remove Daniel from Leticia's care. The Agency filed a section 300 petition on Daniel's behalf because Leticia had a mental illness, was not taking her medication, and had been hospitalized because she was a danger to herself and others. Each of these assertions was borne out by the record. Further, Leticia had refused to let family members check on Daniel's welfare for more than one week. At the time of the jurisdictional hearing, she was still hospitalized and could not care for herself or anyone else. She was not "processing anything," and was agitated, aggressive, and angry. She was not stabilizing on her medication. Because there was no defense to the allegations in the petition and no option but to remove Daniel from her care, the jurisdictional and dispositional findings would have been the same regardless of whether Leticia received notice or whether a guardian ad litem was appointed.

■ Leticia argues the error is not harmless beyond a reasonable doubt because neither her attorney nor her guardian ad litem had the authority to submit the matter at the jurisdictional and dispositional hearing without a benefit to her.[11] A guardian ad litem may not compromise the parent's fundamental rights, including the right to trial, without some benefit to the parent. (*In re Christina B., supra,* 19 Cal.App.4th at p. 1454.)

---

[10] However, the court may continue the jurisdiction hearing beyond that time provided that the continuance is not contrary to the child's interests and the party seeking the continuance establishes good cause. (§ 352, subd. (a).)

[11] Leticia's attorney could not have submitted without authorization from the guardian ad litem because although the attorney controls tactics in litigation (*People v. Towey* (2001) 92 Cal.App.4th 880, 884 [112 Cal.Rptr.2d 326]), where a guardian ad litem is appointed, that person makes tactical and fundamental decisions affecting litigation (*In re Christina B., supra,* 19 Cal.App.4th at p. 1454).

There is at least one reason Leticia would benefit by submission. At the hearing, the court ordered reunification services. Had Leticia contested jurisdiction, the court might have inquired whether Leticia's mental disability fell under the description in Family Code section 7826,[12] which could have provided the court a basis to deny Leticia services under section 361.5, subdivision (b)(2). Thus, submitting served a useful tactical purpose.

In addition, the guardian ad litem may have received permission from Leticia to submit. Although Leticia implies he never spoke with her, the court continued the jurisdictional hearing, presumably at the guardian ad litem's request, so that he could speak with her. Because he sought no further continuances, we assume, in the absence of any information in the record to the contrary, he spoke with her. (Evid. Code, § 664.) He did not request a hearing; therefore we assume Leticia either consented to waive her right to a hearing or the guardian ad litem believed waiving the hearing was in Leticia's best interests.

Leticia also argues the error was not harmless beyond a reasonable doubt because even though she was represented, there is no evidence her attorney spoke with her and she did not authorize the attorney to take a position on her behalf. An attorney has a duty to speak with his or her client. (*In re O.S., supra*, 102 Cal.App.4th at p. 1410; Bus. & Prof. Code, § 6068, subd. (m).) However, in the absence of any evidence in the record to the contrary, we assume the attorney discharged his duty and spoke with Leticia. (Evid. Code, § 664.) Moreover, once the guardian ad litem was appointed, the attorney would have been in communication with him, not Leticia.

Leticia also asserts the court did not have "in personam" jurisdiction over her by appointing a guardian ad litem. We assume Leticia meant to argue the court had no personal jurisdiction over her because "in personam" jurisdiction is a concept that allows a court to have jurisdiction over a nonresident defendant in a civil matter based on that person's contact with the state. (See *Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204, 205 [252 Cal.Rptr. 363].) Leticia is neither an out-of-state resident nor a defendant in a civil matter.

---

[12] Family Code section 7826 provides: "(a) The child is one whose parent or parents have been declared by a court of competent jurisdiction, wherever situated, to be developmentally disabled or mentally ill. [¶] (b) In the state or country in which the parent or parents reside or are hospitalized, the Director of Mental Health or the Director of Developmental Services, or their equivalent, if any, and the superintendent of the hospital, if any, of which the parent or parents are inmates or patients, certify that the parent or parents so declared to be developmentally disabled or mentally ill will not be capable of supporting or controlling the child in a proper manner."

██ Regardless, to the extent Leticia is arguing the court had to take personal jurisdiction over her to proceed with the dependency proceedings, she is mistaken. The court does not take jurisdiction over the parent; it takes jurisdiction over the child.[13] (§ 300.) Personal jurisdiction over a parent in dependency proceedings is obtained when the parent is properly noticed, because notice gives the parent the choice whether to appear in the dependency proceeding. (*David B. v. Superior Court, supra,* 21 Cal.App.4th at p. 1016; *In re O.S., supra,* 102 Cal.App.4th at p. 1408.) Although the notice to Leticia was improper, as discussed above, that error was harmless beyond a reasonable doubt.

## DISPOSITION

The order is affirmed.

Benke, Acting P. J., and Aaron, J., concurred.

---

[13] None of Leticia's authorities compel a different conclusion. Three of the cases upon which she relies are civil cases (*Redmond v. Peterson* (1894) 102 Cal. 595 [36 P. 923]; *Weisfeld v. Superior Court, supra,* 110 Cal.App.2d 148; *Briggs v. Briggs, supra,* 160 Cal.App.2d 312) and provide no procedural guidance about obtaining personal jurisdiction over a mentally ill parent in dependency proceedings. The only dependency case to which she cites addresses alleged error because the court did not appoint a guardian ad litem (*In re Emily R., supra,* 80 Cal.App.4th at p. 1356), and is consequently not on point.