Filed 9/14/23  Marriage of Donahue CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of LUCY and ROBERT DONAHUE, JR.<br><br>LUCY DONAHUE,<br><br>   Appellant,<br><br>      v.<br><br>ROBERT DONAHUE, JR.,<br><br>   Respondent. | G062025<br><br>(Super. Ct. No. 21D007702)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Thomas James Lo, Judge.  Reversed and remanded.

Complex Appellate Litigation Group, Kirstin Ault, Susan Horst and Claudia Ribet for Appellant.

Stephen Temko and Dennis Temko; Walzer Melcher & Yoda, Christopher C. Melcher and Cynthia J. Ponce for Respondent.

**INTRODUCTION**

The due process clause of the United States Constitution "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 319 (*International Shoe*).) As such, "[t]he existence of personal jurisdiction . . . depends upon the presence of reasonable notice to the defendant that an action has been brought . . . and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." (*Kulko v. Superior Court* (1978) 436 U.S. 84, 91 (*Kulko*).) The "essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State. [Citations.]" (*Id.* at p. 92.)

Courts try to take a cautious and thoughtful approach to the exercise of personal jurisdiction over a defendant located outside the state. But it is possible to take the caution too far. Trial courts must ensure that ". . . the Due Process Clause [is] not readily . . . wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." (See *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 474.) The line can be difficult to pinpoint because personal jurisdiction does not "turn on 'mechanical' tests. [Citation.]" (*Id.* at p. 478.) Rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. *Hanson v. Denckla*, 357 U.S. 235, 246 (1958)." (*Kulko*, *supra*, 436 U.S. at p. 92.) A court mustn't exercise jurisdiction where it doesn't exist. But neither should the court look away when jurisdiction is clearly discernible.

The trial court in this case appears to have done that. We must reverse its order granting respondent's motion to quash and dismissing appellant's petition for dissolution of the parties' marriage, and remand the proceedings.

## FACTS

Robert and Lucy Donahue had a destination wedding in Hawaii in March of 2010. For the first half of their marriage, the couple resided in their native Virginia. Robert owned and ran a successful business there, and Lucy worked for it. It was a second marriage for both, and Lucy's two teenage daughters from her previous marriage lived with the couple.

Lucy suffers from health issues which in 2015 caused the couple to travel to California seeking satisfactory treatment for her.[1] They decided Lucy should rent a cottage in Laguna Beach so she could have a more comfortable place than a hotel in which to live while taking treatment. Robert purchased a Mini Cooper in 2015 for Lucy to use,[2] and the vehicle was registered in California in both their names.

Initially, Robert traveled back and forth between California and Virginia, spending the majority of time in Virginia working and seeing to his stepdaughters. But it was not long before the couple realized they liked Southern California enough to make some more permanent connections.

Robert sold off 80 percent of his stake in his company in May 2017 and later that year, the parties purchased a home at 1225 Cliff Drive in Laguna Beach. To Lucy, this was the couple's "dream home" and she and Robert intended to retire there. Robert, however, testified it was a vacation home, an investment property where the whole family could stay when they were in California.

Unfortunately, a year into their stay, the Donahues realized their new property had a significant mold problem. Robert hired a California contractor to remediate the mold. While this was going on, the couple determined they would like to

---

[1] Neither the nature of Lucy's illness nor the scheduled duration of her treatment was explored in any detail in the trial court proceedings, so we have no insight into how long the couple initially planned to stay in California.

[2] Robert testified he did this because Lucy had rented a car which was costing $1,000 per day (!), and he thought it would be cheaper if he just bought her a car to use.

3

remodel 1225 Cliff Drive, and Robert hired an architect and contractors to conduct the renovation. In the meantime, they moved out of the residence and rented a villa at the Montage resort.

The remodeling process sretched out longer than expected because of delays in permitting and approvals from the California Coastal Commission. Robert hired an attorney to represent him in connection with this. In 2019, while they waited on 1225 Cliff Drive, the couple purchased another home in Laguna Beach at 17 Montage Way. Robert testified he paid property taxes on both Cliff Drive and Montage Way. However, he says he planned to sell Montage Way once the Cliff Drive renovation was completed.

In 2018, Lucy's younger daughter moved out to California. Robert and Lucy enrolled her at Sage Hill High School and hired a personal assistant, Emily Brock, who would take her to and from school and take care of other personal errands. Lucy's older daughter desired to remain in Virginia to complete high school so Robert continued to travel back and forth, and the parties maintained their domestic staff at their Virginia residence.

In the spring of 2019, the older child graduated high school and that fall entered college at Vanderbilt University in Tennessee. Robert began spending more time in California, but he contracted Covid in March 2020. It took him two months to recover fully, and by that time, travel restrictions were difficult to circumvent, so he worked and lived mainly in California in 2020 and 2021.

Around October 2021, Lucy discovered a letter in the couple's printer at Montage Way that indicated Robert was contemplating divorce. This precipitated a series of events culminating in Robert's departure from the Montage Way property in late October 2021,and his return to Virginia. Lucy remained in California and filed a petition for dissolution on November 3, 2021. Robert was served with the petition in Virginia on November 5, 2021.

Robert responded to the petition by filing a request for order on December 3, 2021, seeking to quash Lucy's summons and petition because he was "not a resident of California and therefore h[ad] insufficient contacts with California to satisfy the constitutional requirements for the assertion of personal jurisdiction over" him. He filed his own petition for divorce in Virginia on November 8, 2021 and served Lucy on November 19, 2021 in California.

After reviewing submissions from both parties and listening to two days of testimony and argument, the trial court issued a statement of decision granting Robert's motion to quash and dismissing Lucy's petition for lack of in personam jurisdiction over Robert. The trial court reasoned Robert did not do business in California and maintained his residency in Virginia. The court also found Robert had not caused effects in California such that he could be brought into court here.

Lucy filed a petition for writ of mandate, supersedeas, and temporary stay in this court, seeking relief from the trial court's ruling in light of the concurrent divorce proceedings in Virginia. Alternatively, she requested we exercise our original jurisdiction to decide the matter. We denied her request for a temporary stay of the trial court's orders, but gave calendar preference to her appeal of the rulings, which we now decide.

## DISCUSSION

### I.        Standard of Review

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. (*State of Oregon v. Superior Court* (1994) 24 Cal.App.4th 1550, 1557.) Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. (*Burger King* [*Corp. v. Rudzewicz*], *supra*, 471 U.S. at pp. 476–477.) When there is conflicting evidence, the trial court's factual determinations are not

5

disturbed on appeal if supported by substantial evidence. (*Felix v. Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 111.) When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. (*Great–West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204.)" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

Here, there was certainly conflicting evidence as to whether Lucy and Robert intended to permanently relocate to California from Virginia. But the question of permanence is not central to our inquiry here. Instead, the question turns on whether Robert had sufficient contacts with the state of California for him to be brought into court here. As we shall explain, the facts pertinent to *this* inquiry are largely undisputed. Our review of the jurisdictional question is therefore de novo.

**II.        Personal Jurisdiction Framework**

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. (Code Civ. Proc., § 410.10.) A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has had such minimum contacts with the state that the assertion of jurisdiction does not violate '"traditional notions of fair play and substantial justice."' (*International Shoe*[*, supra,*] 326 U.S. [at p.] 316; see also *Burnham v. Superior Court* (1990) 495 U.S. 604, 618–619.)" (*Vons, supra,* 14 Cal.4th at pp. 444-445.)

Since *International Shoe*, two forms of in personam jurisdiction have been recognized: general and specific. General jurisdiction is present where the nonresident defendant has such "'extensive or wide-ranging' [citation]" or "'substantial . . . continuous and systematic' [citation]" activities in the state so as to "warrant jurisdiction

6

for all causes of action asserted against him," whether the specific cause of action alleged in the lawsuit arises from or pertains to that activity or not. (See *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147 (*Cornelison*).) "If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend.[fn] The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction." (*Cornelison*, *supra*, 16 Cal.3d at pp. 147-148.)

As the United States Supreme Court acknowledges, "general and specific jurisdiction have followed markedly different trajectories post-*International Shoe*." (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 132.) Specific jurisdiction has become the main focal point while "general jurisdiction has come to occupy a less dominant place in the contemporary scheme" due to the Court's reluctance to "stretch [it] beyond limits traditionally recognized." (*Id.* at p. 133, fns. omitted.) But general jurisdiction is still a valid concept, depending on the facts of the case. In the past, the U.S. Supreme Court has described certain factors such as the maintenance of offices, the presence of employees, use of bank accounts, and marketing or selling products in the state, but these factors are not an exhaustive list. (See *BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 435.)

7

A court can exercise specific jurisdiction over a nonresident "'only if: (1) "the defendant has purposefully availed himself or herself of forum benefits". . .; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum'" . . .; and (3) "'the assertion of personal jurisdiction would comport with "fair play and substantial justice."'" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)" (*SK Trading Internat. Co., Ltd. v. Superior Court* (2022) 77 Cal.App.5th 378, 387 (*SK Trading*).)

**III.          Jurisdictional Analysis as to Robert**

           **A.               Minimum Contacts**

           As the U.S. Supreme Court has observed, the personal jurisdiction analysis "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' *Estin v. Estin*, 334 U.S. 541, 545 (1948)." (*Kulko*, *supra*, 436 U.S. at p. 92.) But this case seems to us more monochromatic. In our view, the trial court had in personam jurisdiction over Robert in the marital dissolution action, and could take its pick of general or specific jurisdiction.

           A review of the undisputed facts in the matter portrays a well-delineated picture of general jurisdiction. Between 2015 and the beginning of the pandemic, Robert traveled weekly back and forth between California and Virginia, dividing his responsibilities between Lucy's treatments and his stepdaughters and his business. He rented a home here. He purchased a car here and registered it here, using his California address. He then sold a large stake in his out-of-state company and purchased a separate home in Laguna Beach. He enrolled his stepdaughter in an exclusive private high school in Newport Beach, paid her tuition, and donated to the school. He hired contractors to remediate mold and conduct a remodel of the Laguna Beach home. He hired a California lawyer to represent him before California regulatory bodies to acquire permits for the remodel. When it came time to move out of the home to allow renovations to proceed, he did not return to Virginia, but proceeded to rent a villa and then purchase *another* home

8

in Laguna Beach.  Robert received health care from concierge doctors in California.  He hired and paid a household employee in California.  Between 2019 and 2021 when he left, Robert spent most of his time in California.  This set of facts establishes rather clearly the type of systematic, wide-ranging, continuous, and substantial contacts required for general jurisdiction.  (See *Khan v. Superior Court* (1988) 204 Cal.App.3d 1168, 1178 [jurisdiction present where husband "intentionally established numerous contacts" and "diverse links with the state run[ning] the gamut from the personal to the professional to the commercial."].)

Even if we hesitated to exercise general jurisdiction over Robert, we could not but conclude he had sufficient contacts to justify specific jurisdiction over the marital dissolution.  "'The purposeful availment inquiry . . . focuses on the defendant's intentionality.  [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich v. Superior Court*, *supra*, 29 Cal.4th at p. 269; see also *Burger King Corp. v. Rudzewicz*, *supra*, 471 U.S. at p. 475.)  The ""'purposeful availment" requirement ensures that a defendant will not be hailed [*sic*] into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, [citations], or of the "unilateral activity of another party or a third person.'" [Citations.]." (*SK Trading*, *supra*, 77 Cal.App.5th at pp. 387-388.)

Robert could very fairly expect to be subject to California court jurisdiction in this case based on his years of presence in the state with his wife.  Of that we simply have no doubt.  The trial court focused on whether Robert was conducting his business affairs in California.  Because it thought he was not, it felt he should not have to defend the marital dissolution in California.  This was error.

It is true Robert conducted little or no business in the state – but that only further demonstrates the point.  His contacts with California were mostly, if not entirely,

personal. They were in pursuit of his perceived obligations to the wife who is now divorcing him. Indeed, it appears he would not have been in California at all if Lucy's medical condition had not prompted moving their household here. The marriage relocated to California and seemingly fell apart in California. We fail to see why the locus of Robert's business activity is the fulcrum on which the trial court should have rested its analysis, rather than the marriage.[3]

## B. Reasonableness

Since we find the evidence demonstrated sufficient contacts to allow the court to exercise jurisdiction over Robert, we must next analyze whether Robert met his burden to show that it would be unreasonable for it to do so. Robert argued he never intended to relinquish his domicile in Virginia, and was only caught in California for a time due to the pandemic. He further argued the "vast majority" of the couple's estate is located outside California, and the issue of spousal support is unrelated to California.

We find none of these arguments persuasive. Inconvenience alone does not establish unreasonableness. Nor does Robert's assertion of domicile in Virginia. He may have been "caught" in California during the pandemic, but that was a situation created by his own choice to spend substantial amounts of time here prior to the pandemic. Even if much of the marital estate is located outside of California, California courts would still have the authority to adjudicate rights to land located outside its borders so long as jurisdiction over both parties exists, which it does. (See *In re Marriage of Thompson* (2022) 74 Cal.App.5th 481, 487. (*Thompson*).) And spousal support is indeed relevant to California. Lucy lives here, and so presumably her living expenses are being incurred here.

---

[3] Even were it proper to require Robert to derive some economic benefit from his presence in the state for specific jurisdiction, such benefit was proven by his acquisition and remodeling of two properties, which were – by his own admission – investments.

**IV.        Miscellaneous Matters**

Robert invites us to affirm the lower court order based on Family Code section 2320.[4] He contends the trial court made factual findings that neither he nor Lucy was a resident of California, and thus, even if we find personal jurisdiction over Robert is present, section 2320 provides an alternate basis on which to affirm. We disagree. Contrary to Robert's assertions in the briefing, the trial court never considered whether there were grounds to dismiss Lucy's petition based on section 2320. Indeed, the court said as much in the statement of decision: "At the hearing, Robert also challenged Lucy's residency under . . . section 2320. Since Robert failed to raise this issue in his moving papers, this Court precluded Robert from challenging Lucy's residence because no notice of this issue was given." Robert must "adhere to the theory (or theories) on which [his] case[] w[as] tried," as it would be both unfair to Lucy and the trial court to allow him to assert on appeal a theory he was – quite reasonably – explicitly precluded from asserting below. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.) The motion was based on lack of personal jurisdiction, and that was the focus of both the evidentiary hearing and the court's ruling.

We recognize our decision today has repercussions in Virginia, where Robert's marital dissolution action has apparently been proceeding apace. This we regret but cannot help. "'[W]here two [courts] have concurrent jurisdiction over the same parties and subject matter, the tribunal which first acquires jurisdiction of the parties is entitled to retain it exclusively.'"" (*In re Marriage of Hanley* (1988) 199 Cal.App.3d 1109, 1115.)" (*Thompson*, *supra*, 74 Cal.App.5th at pp. 486-487, italics omitted.) The status of the Virginia proceeding does not change the time at which the trial court in this matter acquired jurisdiction.

---

[4]        All further statutory references hereinafter are to the Family Code. Section 2320 states in pertinent part: "a judgment of dissolution of marriage may not be entered unless one of the parties to the marriage has been a resident of this state for six months and of the county in which the proceeding is filed for three months next preceding the filing of the petition." (*Id.*, subd. (a).)

11

## DISPOSITION

The orders granting respondent's motion to quash and dismissing appellant's petition for dissolution are reversed with instruction that respondent's motion be denied.  The matter is remanded to the trial court.  Appellant to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.