[No. G032293. Fourth Dist., Div. Three. July 30, 2003.]

D. E., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties in Interest.

**COUNSEL**

Law Office of J. Michael Hughes and Lawrence A. Aufill for Petitioner.

No appearance for Respondent.

Benjamin P. de Mayo, County Counsel, and Ward Brady, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Law Office of Harold LaFlamme and Linda O'Neil for Real Parties in Interest M.K.E. and M.N.E.

**OPINION**

## INTRODUCTION

**FYBEL, J.**—D. E. was incarcerated at the time the juvenile court conducted a joint jurisdictional and dispositional hearing for his children, M.K.E. and M.N.E. After the hearing had been continued several times, D. E. expressed a desire to be present, and the juvenile court issued a transportation order. But the county in which D. E. was in custody refused to permit him to be transported. The juvenile court proceeded with the hearing in D. E.'s absence. The juvenile court declared M.K.E. and M.N.E. to be dependent children, denied reunification services, and set a hearing to terminate parental rights. D. E. has petitioned for a writ of mandate, pursuant to California Rules of Court, rule 39.1B.

██ Even if the juvenile court violated D. E.'s rights under Penal Code section 2625 by conducting the jurisdictional and dispositional hearing without D. E.'s presence, Welfare and Institutions Code section 352, subdivision (b) required the court to proceed. By statute, the juvenile court could not continue the dispositional hearing to a date more than six months after M.K.E. and M.N.E. were detained. Continuing the dispositional hearing as requested by D. E.'s counsel to ensure D. E.'s presence would have extended

the date of the hearing past the six-month mark. We conclude that in such a circumstance, the rights of a child to a prompt resolution of his or her dependency proceedings outweigh any right of an incarcerated parent to be present at those proceedings. Further, even if the juvenile court had erred by failing to continue the dispositional hearing, any error was harmless. Therefore, we deny D. E.'s writ petition.

### FACTS

Twins M.K.E. and M.N.E., now seven years old, were taken into protective custody on November 10, 2002, due to the alleged sexual abuse of M.N.E. by her father D. E., a registered sex offender. M.K.E. and M.N.E.'s mother died of a morphine overdose in September 2002. Following the mother's death, M.K.E. and M.N.E. lived with their maternal aunt and their godparents.

On November 10, 2002, M.N.E. told her aunt that D. E. "had put his 'peepee in my butt' " and "every time she visits [D. E.], he sends her brother [M.K.E.] into the bedroom and he does this to her on a bed in the living room." The aunt immediately notified the police. Both children were interviewed by the Child Abuse Services Team (CAST) on November 12. M.K.E. denied any knowledge of his sister being molested. In her CAST interview, M.N.E. said she told the police the truth and she knew the difference between the truth and a lie. When asked about sexual abuse by D. E., M.N.E. said, " 'I don't want to talk about it.' " She later told a CAST nurse " 'Daddy touch her with his middle,' on the area between her vagina and anal area."

Three child abuse reports involving allegations of sexual abuse by D. E. against his children and stepchildren had previously been filed. On March 18, 2000, allegations of sexual abuse by D. E. against his stepdaughter were substantiated. At that time, the mother refused further services and the referral was closed.

On June 8, 2000, a report alleging sexual abuse and general neglect was filed. M.K.E. and M.N.E. denied D. E. had sexually abused them. D. E. was not living in the home at the time, and a social worker informed the mother that she must keep D. E. separated from the children at all times. D. E. was also advised he was not to be alone with M.K.E. and M.N.E. and he was not to be in the proximity of his stepdaughter. The allegations of sexual abuse and general neglect were determined to be "inconclusive."

The Orange County Social Services Agency (SSA) again investigated the family in December 2000, in response to a police report that D. E. had forced

a three-year-old child, whose mother rented a room in the family's home, to orally copulate him. M.K.E. and M.N.E. again denied any sexual abuse, and also denied D. E. was living in the home. The mother again declined services.

D. E. has a lengthy and varied criminal history, including convictions for burglary; gambling; robbery; carrying a loaded firearm in a public place; grand theft; tampering with a vehicle; prostitution; providing false identification to a peace officer; possession, transportation, and sale of controlled substances; child molestation; and assault and battery.

SSA filed a dependency petition on November 13, 2002, alleging M.K.E. and M.N.E. came within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), (g) (no provision for support), and (j) (abuse of sibling). (All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.) D. E. denied all material allegations.

M.K.E. and M.N.E. were temporarily detained at Orangewood Children's Home on November 14, 2002. The temporary detention orders were made the permanent orders of the court on November 18. Also on November 18, the court set the joint jurisdictional and dispositional hearing for December 10. ■ Under section 352, subdivision (b), the juvenile court was required to conduct the dispositional hearing no later than six months after the detention hearing. SSA and counsel for M.K.E. and M.N.E. argue the six months expired May 14, 2003. D. E. argues the six-month limit expired May 16, 2003. (May 18, 2003, fell on a Sunday.)

On December 10, pursuant to a stipulation of the parties, the court continued the matter to January 14, 2003, to permit additional notices to be sent under the Indian Child Welfare Act.

On January 14, at D. E.'s request, the hearing was continued to February 4, 2003. On February 4, the hearing was continued to February 18 to permit review of the CAST interview tape, which was not then available. On February 18, the hearing was continued to February 25 to allow D. E.'s counsel to obtain the CAST interview tape. On February 25, D. E.'s counsel declared a conflict, and new counsel was appointed for him. The hearing was continued to March 27 to permit new counsel time to acquaint himself with the case.

On March 25, D. E.'s counsel filed a motion for a 30-day continuance of the joint jurisdictional and dispositional hearing. Two grounds were raised: (1) D. E. was in custody, en route to an unknown detention facility, and could

not be present in court on March 27; and (2) the police department had refused to comply with an order to produce the CAST interview videotape, and counsel could not prepare for the hearing without reviewing that crucial evidence. The memorandum of points and authorities submitted in support of the motion for continuance stated, in part: "Father's counsel is only requesting a 30 day continuance which is reasonable and not contrary to the best interests of the minors." SSA objected to the continuance because the matter was approaching the six-month cutoff date under section 352, subdivision (b), and a further continuance would not be in the best interests of M.K.E. and M.N.E. Counsel for M.K.E. and M.N.E. expressed concern that the matter was dragging out, but also stated she would rather have counsel use the CAST tape than call M.N.E. to the stand. The court granted a 30-day continuance to April 29.

On April 14, SSA filed an ex parte application and order asking the court to discontinue visitation between D. E. and the children because D. E. had been located on April 7 in maximum security at the Clay Bank Detention Facility in Vallejo, California. SSA's report stated "[t]he father's Criminal Court hearing is scheduled to be heard on May 9, 2003. He will remain in the Detention Facility until that date. It is unknown if the father will be released or transferred on May 9, 2003." D. E.'s counsel did not at that time move to continue the hearing scheduled for April 29.

When the matter was called on April 29, D. E.'s counsel orally requested another continuance because D. E. had requested to be present, but was still in custody and had not been transported. Both SSA and counsel for M.K.E. and M.N.E. opposed the motion. The court stated: "Well, you know, I wouldn't mind giving you two weeks if I had any assurances that we are going to do something in two weeks. It appears that, you know, it's not going to change things much if you look at the reports, unless you have some evidence that I don't know about. I would guess that due process would require me to give you a couple weeks. We are only talking about two weeks, but I don't see that you're going to be able to get him down here. [¶] I will grant a two week continuance on this matter with the understanding that it will go on that date or not go on that date; whether he is here or not here. And I will sign whatever order you want to try to get him here.... [¶] ... [¶] ... [T]his court will not grant any further continuance unless you have filed the necessary motion and there is some documentation supporting the fact that he can be here or not be here." The court continued the hearing to May 12.

The juvenile court issued an order of transportation to obtain D. E.'s presence on May 12. Solano County, however, refused to release D. E. for the May 12 hearing because he still had local charges pending. The court trailed the matter one day in order to try to obtain D. E.'s presence.

On May 13, D. E. was still in custody outside Orange County and not present at the hearing, and his attorney again orally requested a continuance, stating, "He believes his matters have been resolved and he is subject to transportation. I'd make a motion to continue this for a period in the future, perhaps a month, in order to have him brought down." D. E.'s counsel did not file a written motion, and submitted no documentation supporting D. E.'s claims. The juvenile court denied the motion to continue.

The court admitted all SSA reports into evidence without objection. D. E.'s counsel advised the court he would not cross-examine any witnesses and would not call any witnesses, and submitted the matter on the record.

The juvenile court found all allegations of the petition true by a preponderance of the evidence and declared M.K.E. and M.N.E. to be dependent children. The court then found reasonable efforts had been made to prevent the removal of the children from their home or to permit the children to return to their home, and found by clear and convincing evidence the children should be taken from D. E.'s physical custody pursuant to section 361, subdivision (c)(1), (4), and (5). Finally, the court found it would be detrimental to the children to vest custody with D. E., and vested custody with SSA. The court set a hearing under section 366.26 for August 27, 2003.

D. E. petitions for a writ of mandate pursuant to California Rules of Court, rule 39.1B. Counsel for M.K.E. and M.N.E. submitted a letter brief urging us to deny the writ, arguing that at the time of the dispositional hearing, "[t]hese children had already languished for six months in 'temporary placements,' and needed 'resolution,' even if not prompt, of their custody status."

## DISCUSSION

### A. *PENAL CODE SECTION 2625 MIGHT REQUIRE THE PRESENCE OF BOTH THE INCARCERATED PARENT AND HIS OR HER ATTORNEY AT A DISPOSITIONAL HEARING, BUT WE NEED NOT REACH THAT ISSUE.*

■ When the government seeks to declare a child a dependent of the juvenile court, and the child's parent is incarcerated, the parent must receive notice of the proceedings. "In ... any proceeding brought under Section 300 of the Welfare and Institutions Code, where the proceeding seeks to adjudicate the child of a prisoner a dependent child of the court, the superior court of the county in which the proceeding is pending, or a judge thereof, shall order notice of any court proceeding regarding the proceeding transmitted to the prisoner." (Pen. Code, § 2625, subd. (b).) If the incarcerated parent

wishes to be present at the dispositional hearing, the court must issue an order for his or her transfer. "Upon receipt by the court of a statement from the prisoner or his or her attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court." (Pen. Code, § 2625, subd. (d).)

Subdivision (d) of Penal Code section 2625 goes on to state "no petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may be adjudicated *without the physical presence of the prisoner or the prisoner's attorney*, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding." (Italics added.) The language of the statute we have highlighted above—read together with other statutes in the same statutory scheme—could mean both the prisoner and his or her attorney must be present in court for the hearing to proceed, as D. E. argues. The right of an incarcerated parent to be present at a dispositional hearing has been said to be "absolute." (*In re Barry W.* (1993) 21 Cal.App.4th 358, 368 [26 Cal.Rptr.2d 161].) Two cases, however, have interpreted the language of the statute to permit the dispositional hearing to be conducted without the presence of the incarcerated parent, as long as the parent's attorney is physically present. (*In re Axsana S.* (2000) 78 Cal.App.4th 262 [92 Cal.Rptr.2d 701]; *In re Rikki D.* (1991) 227 Cal.App.3d 1624 [278 Cal.Rptr. 565].)

D. E. received notice of the joint jurisdictional and dispositional hearing and expressed his desire to be present. The juvenile court issued an order for D. E.'s transportation to attend the hearing, but he was not present on the day the hearing was conducted because the county where he was incarcerated refused to release him for the hearing in Orange County Juvenile Court. D. E. was represented by counsel at the hearing. We do not need to reach the issue of whether D. E.'s statutory rights under Penal Code section 2625 were violated because the juvenile court here was statutorily prohibited from further continuing M.K.E. and M.N.E.'s dispositional hearing to attempt to obtain D. E.'s presence.

B. *SECTION 352 REQUIRES THAT A DISPOSITIONAL HEARING BE CONDUCTED NO LATER THAN SIX MONTHS AFTER THE DETENTION HEARING.*

■ Subdivision (a) of section 352 requires generally that continuances in dependency cases be based on good cause, and not be contrary to the child's

best interests: "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. Neither a stipulation between counsel nor the convenience of the parties is in and of itself a good cause. Further, neither a pending criminal prosecution nor family law matter shall be considered in and of itself as good cause."

■ Section 352, subdivision (b) contains the provision applicable to this case, placing stricter limits on continuances of dispositional hearings when a child has been removed from the parents' custody, and setting an absolute six-month maximum on the time between a detention hearing and a dispositional hearing. "Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance. The facts supporting such a continuance shall be entered upon the minutes of the court. *In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319*." (§ 352, subd. (b), italics added.)

■ Because dependency matters must be heard and decided within a reasonably prompt time, the juvenile court has no discretion to extend the time limits of section 352, subdivision (b). "[T]he court may not, under any circumstances, grant continuances that would cause the dispositional hearing to be completed more than six months after the detention hearing." (*In re Axsana S., supra,* 78 Cal.App.4th at p. 272.)

M.K.E. and M.N.E. were temporarily detained on November 14, 2002. The court made the temporary detention orders the permanent orders of the court on November 18. D. E. argues that the court could have continued the hearing until May 16, 2003 without violating section 352's six-month maximum, and that he was in custody in Orange County on May 16, 2003. SSA and counsel for M.K.E. and M.N.E. argue May 14 was the last day to conduct the hearing. However, D. E.'s counsel did not ask for a continuance

to May 14 or May 16; he asked the court to continue the hearing "for a period in the future, perhaps a month, in order to have [D. E.] brought down." The requested one-month continuance would have put the hearing past the six-month deadline.

## C. SECTION 352'S PROHIBITION ON A CONTINUANCE OF THE DISPOSITIONAL HEARING PAST THE SIX-MONTH MARK MUST TAKE PRECEDENCE OVER ANY PROHIBITION ON CONDUCTING A DISPOSITIONAL HEARING IN THE ABSENCE OF AN INCARCERATED PARENT.

We are faced with a statute containing mandatory language requiring the requested continuance be denied (§ 352, subd. (b)) and with another statute arguably requiring D. E.'s presence at the hearing (Pen. Code, § 2625). If both statutes cannot be complied with here, we must determine which statute's mandate is *more* compelling under the circumstances. ▮ In the context of a juvenile dependency proceeding, we conclude the time requirements for a dispositional hearing pursuant to section 352, subdivision (b) take precedence over the arguable statutory right of a parent to be present at the dispositional hearing. (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 198 [90 Cal.Rptr.2d 134] [timeliness is of "vital importance ... in the early stages of dependency proceedings"]; *In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1294 & fn. 3 [247 Cal.Rptr. 754] [the court did not abuse its discretion in refusing to continue the dispositional hearing until father's criminal proceedings concluded, although this would force father either to give up his right to testify at the dispositional hearing or to waive his right against self-incrimination].)

We have found no cases considering the intersection of section 352 and Penal Code section 2625. *In re David H.* (1995) 33 Cal.App.4th 368 [39 Cal.Rptr.2d 313], however, is instructive. Infant David H. at three weeks of age was taken into protective custody because there was a substantial risk he would be abused or neglected by his parents. (*Id.* at p. 373.) A detention hearing was held June 21, 1990. (*Ibid.*) Despite all statutory time requirements to the contrary, the jurisdictional hearing was held February 5, 1992 more than 19 months later. (*Ibid.*) The dispositional hearing was conducted June 1, 1992—nearly two years after the detention hearing—and reunification services were ordered. (*Ibid.*) On November 30, 1992, the matter was set for a hearing under section 366.26 and reunification services were terminated. (*David H.*, at pp. 373, 376.) At the section 366.26 hearing on May 11, 1993, parental rights were terminated and David was freed for adoption. (*Id.* at p. 373.)

In *In re David H., supra,* 33 Cal.App.4th 368, the father correctly argued on appeal that the juvenile court failed to comply with the requirement of

section 366.21, subdivision (e) that reunification services be continued if the child is removed from parental custody and not returned after the six-month review hearing. (*David H.,* at pp. 385–386.) The juvenile court had terminated reunification services and set the matter for a hearing under section 366.26 to comply with section 366.21, subdivision (g)(1), which provides that a hearing to determine whether the child should be referred for adoption must be held within 18 months of the date the child was originally taken from the physical custody of the parents. (*David H.,* at p. 386.) As the appellate court noted, "Section 366.21, subdivisions (e) and (g)(1) seem to impose conflicting requirements in this case." (*Ibid.*) After construing the two conflicting sections "with reference to [the] whole system of dependency law, so that all parts may be harmonized" (*id.* at p. 387), and "so as to effect the apparent legislative intent and avoid absurd results" (*ibid.*), the appellate court determined "the conflict between section 366.2[1], subdivisions (e) and (g)(1) plainly must be resolved in favor of subdivision (g)(1) and the policies which it serves" (*ibid.*).

Here, similarly, any conflict between section 352 and Penal Code section 2625 must be resolved in favor of section 352 and its underlying policies. The overarching goal of the juvenile dependency system is to promote the best interests of children within the system. (§ 202.) Children in protective custody have an interest in the prompt resolution of their custody status. (§ 352, subd. (a); *In re J. I.* (2003) 108 Cal.App.4th 903, 912 [134 Cal.Rptr.2d 342].) The parents of children in protective custody also have rights that must be protected to the extent possible. The parents' rights, whether to participate in critical dependency proceedings or to obtain necessary reunification services, cannot be used to delay the dependency proceedings when a statute provides an absolute maximum limit on the time within which a particular hearing must take place.

## D. ANY ERROR IN CONDUCTING THE DISPOSITIONAL HEARING WITHOUT THE PRESENCE OF D. E. WAS HARMLESS IN THIS CASE.

Conducting a dispositional hearing in the absence of an incarcerated parent who has expressed a desire to be present may violate a statutory right, but not a due process right. (*In re Axsana S., supra,* 78 Cal.App.4th at pp. 268–270.) As long as the parent has meaningful access to the court through appointed counsel, there is no due process violation. (*Ibid.*)

D. E. may have had a statutory right to be personally present at the dispositional hearing. Even if he had had such a right, and even if it had been violated, we would apply the harmless error standard and affirm. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *In re Melinda J.* (1991)

234 Cal.App.3d 1413, 1419 [286 Cal.Rptr. 239]; *In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1028 [245 Cal.Rptr. 264]; *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1077–1078 [233 Cal.Rptr. 632].) For it is not reasonably probable that a result more favorable to D. E. would have been reached if he had been present in court on May 13, 2003.

D. E.'s counsel did not object to the admission of SSA's reports, cross-examine the social workers, or call any witnesses. No witnesses testified; counsel submitted the matter on the record. D. E. has not provided any explanation of what he might have said or done, if he had been present at the dispositional hearing, that would have changed the court's rulings, and we can conceive of none. The record before the juvenile court was replete with allegations of D. E.'s sexual molestation of minors, including his natural children and stepchildren, some of which were substantiated, and evidence of D. E.'s extensive criminal background. Even if the juvenile court had the discretion to further continue M.K.E. and M.N.E.'s dispositional hearing to allow D. E. to be present and erred in failing to do so, any error was harmless.

## DISPOSITION

The writ petition is denied.

Rylaarsdam, Acting, P. J., and O'Leary, J., concurred.