164 Cal.App.4th 914 (2008)
In re A.M., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent,
v.
O.M., Defendant and Appellant.
No. G039713.
Court of Appeals of California, Fourth District, Division Three.
July 10, 2008.
As modified July 29, 2008.
*917 Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.
Benjamin P. de Mayo, County Counsel, Karen L. Christensen and Julie J. Agin, Deputy County Counsel, for Plaintiff and Respondent.
No appearance for Minor.

OPINION
FYBEL, J.

Introduction
The minor, A.M., was taken into protective custody in November 2006 based on allegations she had been abused by her father, O.M. (Father). In December 2007, the juvenile court issued jurisdiction and disposition orders sustaining the allegations of the petition, vesting sole physical custody with A.M.'s mother (Mother), and terminating jurisdiction with visitation orders granting Father monitored visits. A final custody order was entered in January 2008.
Father challenges the jurisdiction and disposition orders on a single ground: He contends the juvenile court erred by denying his requests to represent himself in propria persona.
We hold that in deciding whether to grant a parent's request for selfrepresentation in a juvenile dependency proceeding, the juvenile court must consider the child's right to a prompt resolution of custody status. The juvenile court has discretion to deny the request when it is reasonably probable that self-representation will unduly delay the proceedings, impairing *918 the child's right to a prompt resolution of custody status. The parent's disruptive behavior may be sufficient, but is not necessary to deny the request.
Applying that standard, we conclude the juvenile court did not abuse its discretion in denying Father's requests for self-representation because it was reasonably probable granting them would have led to undue delay that would have impaired A.M.'s right to a prompt resolution of custody status. We therefore affirm.

FACTS AND PROCEDURAL HISTORY

I. Facts Leading to A.M.'s Detention

On November 20, 2006, the Orange County Social Services Agency (SSA) detained A.M., then 13 years old, based on allegations Father had physically abused her. A.M. had reported that Father had hit her on the head and arms with a hardcover book, causing her to fall, and that Father had slapped her across the face on numerous occasions as a form of discipline. A.M. also had reported Father had brought her to the United States from Egypt in 2005 without Mother's knowledge and that Father had refused to allow A.M. to have any contact with Mother. The social worker stated that A.M. "demonstrated severe fear of her father."
The social worker interviewed A.M. on November 20, 2006, and reported: "A[.M.] stated that she was not in the United States against her will, but her father never allowed her to say good bye to her mother and he has refused to allow her to have any contact with her mother since she has been in California.... A[.M.] stated that she has been volunteering at Fountain Valley Library and it is there that she has been able to e-mail her mother with her current location and where she attends school. A[.M.] stated that she is fearful for her father to find out that she has been communicating with her mother for fear of him becoming physically violent towards her. A[.M.] stated that her father disciplines her by yelling at her, screaming insults at her and then insulting her mother. A[.M.] stated that on several occasions her father has slapped her across the face with an opened hand. A[.M.] reported that on or about November 19, 2006, she was reading a book and her father requested her to complete some chores. A[.M.] stated that she told her father she was tired and she continued to read her book. A[.M.] stated that her father told her to go to sleep or complete the chores, but to stop reading. A[.M.] stated that she went into the bathroom where she took the book and finished what she was reading. A[.M.] reported that when she came out of the bathroom her father was waiting for her and he grabbed the book and started beating her in the head with the book, which was a hard covered novel, *919 according to A[.M.] A[.M.] stated that she put up her arms to deflect her father from hitting her in the head and she ended up lying on the floor.... A[.M.] stated that her father has a propensity for violence and she has witnessed her father become violent towards her sister in Egypt. A[.M.] stated that she witnessed her father hit her sister all over her body with his fists. A[.M.] also reported that she has witnessed her father being violent towards her mother."
The social worker also met with Father on November 20, 2006. He denied abusing A.M., denied he had ever slapped her face, and denied ever hitting her with a book. The social worker described Father as "argumentative" and stated he did not directly answer the questions asked. Father provided different home addresses to the social worker, the police, and A.M.'s school.
The United States Department of State confirmed Father and A.M. were United States citizens and A.M. was in California legally.
Police officers interviewed A.M.'s brother at his high school. He "denied any type of abuse" and "denied being fearful of his father." He stated he saw Father with a book and A.M. on the floor, but "did not give any information as to seeing his father hit A[.M.] with the book." The officers decided the brother did not need to be brought into protective custody, was not a victim, and "would not make a good witness."

II. The Juvenile Dependency Petition

On November 22, 2006, a juvenile dependency petition was filed alleging A.M. came within Welfare and Institutions Code section 300, subdivision (b) (failure to protect). (All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.) At the detention hearing on November 27, the juvenile court ordered that A.M. be detained. The court scheduled a jurisdiction/disposition hearing for December 19, 2006. A.M. was placed with foster parents.
On December 19, 2006, Mother appeared, confirmed an Egyptian address for notice purposes, and provided a confidential address in the United States. The court continued the matter to February 5, 2007.
On February 5, 2007, the juvenile court trailed the matter to February 6. On that date, Father filed a letter asking "that I be in the lead and in charge of my own representation in the above designated case, dealing directly with the court."
On February 6, the juvenile court continued the matter to March 20, 2007, and later continued the matter to April 10, then to May 3, and finally to May *920 22. On May 22, Father requested he be allowed to represent himself just for that day. After the juvenile court explained to Father he could not represent himself just for the day, Father chose to have the public defender continue to represent him "for today" and stated, "you will hear me later on if I want to speak."

III. The Jurisdiction/Disposition Hearing

Due to Father's medical condition, the juvenile court ordered a series of continuances of the jurisdiction/disposition hearing. Ultimately, the hearing commenced on October 9, 2007, and continued on October 11, 12, 29, November 29, and December 6 and 7. The court received in evidence SSA's reports dated December 19, 2006, and February 5, March 20, April 10, May 3 and 22, June 5, September 11, and October 9, 2007. Senior social worker Curtis Vaughn and senior social worker Mary Weinberg testified on October 9. Father testified on October 11 and 12. On October 16, Father's counsel informed the court that Father was not able to be present due to illness.
When the matter resumed on October 29, Father's counsel (the public defender) declared a conflict of interest and asked to be relieved as counsel. The juvenile court granted the request, appointed new counsel to represent Father, and continued the matter for one month to allow new counsel to prepare. Although Father wanted a three- or four-month continuance, his new counsel did not believe it would take that long to prepare.

IV. Father's November 29, 2007 Request for Self-representation

On November 29, 2007, the juvenile court held a "Marsden-type" (People v. Marsden (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (Marsden)) hearing because Father asked the court to relieve his counsel and allow him to represent himself. After expressing concern his new counsel was "not adequately familiar with the case so far," Father stated he needed to prepare his new counsel "to do his job right" and if that were not possible, he wanted "to fire [his counsel] and take over and get the help from the court to prepare and defend." Father asked the court to declare a mistrial, claiming the juvenile dependency proceeding was "nothing more than a hate crime" and his prior attorney "took the sides of the social workers." Father asked to be represented by a Muslim attorney from outside of California with no connection to SSA, then asked to defend himself because "I am the one who reads these reports, who understands the lies and the fabrications, who could answer any of these."
During the course of the hearing, Father's new counsel confirmed he felt competent to represent Father and proceed with trial in one week.
*921 The juvenile court denied Father's request to represent himself and request for a mistrial. The court told Father: "I certainly share your concern that you get a fair trial. But I do want you to understand that these cases have a certain time line that they are required to proceed under. In this case we are more than a year, I believe, into this case. That's way past the time that it should have gone to trial. [¶] I understand that you feel that the allegations are baseless and that you're a victim of a hate crime and that there's nothing to this and it should be dismissed. But at this point the agency has provided enough evidence to go to a trial. I understand you disagree with that, but that's the court's opinion at this point."
After the Marsden-type hearing, Father's new counsel asked for a 60-day continuance because "my client is of the opinion that much more time than one week is necessary for me to adequately express his position in a contested matter." The court denied the request for a 60-day continuance, stating: "I know that father feels he would like to have more time so he can be intimately involved in planning the strategy of the case. I've already explained to him that the best we can do here is to offer a fair trial and not a perfect trial. I believe father is represented by more than competent counsel who should be able, given the continuance already granted in addition to this further one, be able to deal with the issues that are presented in this trial. And, again, it is not an extremely complicated case that requires extensive preparation time. [¶] So I am going to continue this matter to next Thursday, December 6th at 9:00 a.m. ... [¶] There will be no further continuances granted in this matter, as I believe we have gone well past the statutory time for resolution and I believe that further continuances are harmful for all involved."
On December 6, 2007, trial resumed and Kymber Douty, the original social worker on the case, testified. On December 7, Father requested a continuance and renewed his request to represent himself. The juvenile court denied both requests. Weinberg then testified again, this time called by Father. On December 10 and 11, Mother testified, and on December 11, A.M. testified in chambers.

V. Father's December 17, 2007 Request for Self-representation

When trial resumed on December 17, 2007, Father again asked to represent himself. Father asserted his counsel was not doing an adequate job, would not meet or talk with Father, hung up the phone on him, and called him names. Father argued his counsel "was under the impression that you [the court] already had a decision in your mind and it would not help to put [in] any more effort. In fact, according to him, although he didn't see any basis for the *922 case, like many legal people like himself, he was under the impression that your Honor doesn't like me personally and that would not come out in my interest. He also didn't see any point of doing [an] adequate job concerning showing that there was no basis for this case, because he believed that your Honor has already made a decision." Father asserted his counsel was not advocating on his behalf but was supporting SSA.
Father's counsel responded: "I advised [Father] that more evidence probably wouldn't affect your decision. More testimony on the issues that he wants to bring up to the court probably would not aid the court in coming to a decision. [¶] ... [¶] I'm trying to explain to him why it's not necessary to bring certain evidence before the court as it doesn't relate to the allegations of the petition. And I've tried to explain to him the objections I would anticipate regarding some of the evidence that he would like to present to the court.... [¶] That has not appeased father. He has a strategy that he wants to use that I cannot do ... legally." Counsel explained he had met with Father numerous times, "several times a week for several hours at a time, which was preventing me from having time to look at the case." Counsel continued: "[W]e've had four-hour telephone conversations that could have gone on for eight hours or more if I hadn't put a stop to them. And I did hang up on him one time, because after approximately 20 minutes I couldn't get a word in edgewise."
The court construed Father's request as a motion to relieve appointed counsel and denied it. The court stated: "I believe the father has had certainly more than adequate representation. And I believe given the time in this case, certainly one year didn't seem to help [Father's former counsel] in terms of dealing with the father. He presents challenges to any attorney that is appointed to represent him, because he is very demanding in terms of what he expects from counsel."
After hearing closing argument, the court took the matter under submission on December 17, 2007.

VI. Jurisdiction, Disposition, and Visitation Orders

The juvenile court issued its ruling on December 20, 2007. After ordering several amendments to the petition, the court found the allegations to be true by a preponderance of the evidence, except for two paragraphs not relevant here. The court found A.M. was a credible witness, did not have a motive to lie, and testified consistently during the hearing. The court concluded there was a pattern of abuse that placed A.M. at risk, declared A.M. a dependent child of the juvenile court under section 360, subdivision (d), and ordered that Mother have sole physical custody of A.M. (Father and Mother continued to have joint legal custody of A.M.) Adopting SSA's recommendation, *923 the juvenile court issued orders for visitation between Father and A.M. in a neutral setting with a neutral monitor paid by Father. The court terminated jurisdiction.
Father filed a notice of appeal on December 20, 2007. A "Custody Order-Juvenile-Final Judgment" was filed on January 9, 2008. The judgment incorporated the visitation orders and stated: "[A.M.']s feelings about visitation to be taken into consideration. Child not to be physically forced to visit with father."

DISCUSSION

I. The Juvenile Court Did Not Abuse Its Discretion by Denying Father's Requests to Represent Himself.

(1) Section 317, subdivision (b) requires appointment of counsel for an indigent parent or guardian in a juvenile dependency case "unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section." A waiver of counsel is valid if the juvenile court has apprised the parent of the dangers and disadvantages of self-representation and the risks and complexities of his or her particular case. (In re Brian R. (1991) 2 Cal.App.4th 904, 921 [3 Cal.Rptr.2d 768].)
Section 317, subdivision (b) has been interpreted to give a parent in a juvenile dependency case a statutory right to self-representation. (In re Angel W. (2001) 93 Cal.App.4th 1074, 1083 [113 Cal.Rptr.2d 659] (Angel W.).) This right is statutory only; a parent in a juvenile dependency case does not have a constitutional right to self-representation. (Id. at p. 1082.)

A. Standard for Ruling on a Parent's Request for Self-representation in a Juvenile Dependency Proceeding.

1. Angel W.

(2) Angel W., supra, 93 Cal.App.4th 1074 addressed the applicable standard when a parent makes a request for self-representation after having been represented by appointed counsel. The Angel W. court explained: "When the child has been removed from the home and appointment of counsel is mandatory for an indigent parent absent a knowing and intelligent waiver, more is required than simply accepting that the parent no longer desires counsel and ascertaining the parent is not using the request to proceed pro se to intentionally obstruct the proceedings. Certainly, to comply with section 317, subdivision (b), the court must take a waiver of the right to counsel. *924 There is no requirement, however, that the court engage in a full Faretta-type [(Faretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525])] admonition and inquiry, although similar admonitions have occurred in civil cases. [Citation.] Further, the court must respect the right of the parent to represent him- or herself as a matter of individual autonomy and avoid forcing the mentally competent parent to proceed with appointed counsel in the guise of protecting a person who is unskilled in the law and courtroom procedure. [Citations.]" (Angel W., supra, 93 Cal.App.4th at p. 1084.)
The juvenile court in Angel W. had made comments suggesting it was denying the parent's request for self-representation based on concerns the parent might disrupt courtroom proceedings. (Angel W., supra, 93 Cal.App.4th at p. 1084.) The appellate court stated this concern was valid, but recognized "[t]he possibility of disruption or delay, however, exists to some degree with virtually all pro se litigants and the mere possibility alone is not a sufficient ground to deny self-representation." (Id. at pp. 1084-1085.) Against the concern that a pro se parent might disrupt or delay the proceedings, the Angel W. court considered the child's right to a prompt and fair disposition, and held: "Only when the pro se litigant `is and will remain' so disruptive as to significantly delay the proceedings or render them meaningless and negatively impact the rights of the minor in a prompt and fair hearing may the court exercise its discretion to deny self-representation." (Id. at p. 1085.)
In support of its holding, the Angel W. court cited a criminal case, People v. Welch (1999) 20 Cal.4th 701, 729 [85 Cal.Rptr.2d 203, 976 P.2d 754], in which the California Supreme Court considered the denial of a criminal defendant's request for self-representation made three and one-half months before the start of jury selection. In People v. Welch, the Supreme Court concluded a trial court has discretion to deny the criminal defendant's request for self-representation when the court decides the defendant "is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation." (People v. Welch, supra, 20 Cal.4th at p. 735.)
Angel W. suggests the juvenile court may deny a parent's request for self-representation only when the parent has been and will remain disruptive of the proceedings. However, Angel W. arose in the context of a potentially disruptive parent, and therefore the court did not address other grounds for denying a parent's request for self-representation.

2. The Child's Right to a Prompt Resolution of Custody Status

Angel W.'s citation to a criminal case dealing with a defendant's request for self-representation suggests Angel W. should be read narrowly because a *925 parent's request for self-representation in a juvenile dependency proceeding differs from the same request by a criminal defendant in two significant respects. First, as explained, the parent's right of self-representation is statutory, not constitutional, and therefore must be balanced against other parties' rights. Second, the parent's exercise of the statutory right of selfrepresentation could affect the child, who also has rights requiring protection.
(3) We have declared: "The overarching goal of the juvenile dependency system is to promote the best interests of children within the system. (§ 202.) Children in protective custody have an interest in the prompt resolution of their custody status." (D. E. v. Superior Court (2003) 111 Cal.App.4th 502, 513 [4 Cal.Rptr.3d 10].) "Courts should strive to give the child this stable, permanent placement ... as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision." (In re Celine R. (2003) 31 Cal.4th 45, 59 [1 Cal.Rptr.3d 432, 71 P.3d 787].) For example, in deciding whether to grant a continuance, "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).)
In D. E. v. Superior Court, supra, 111 Cal.App.4th 502, 512, a panel of this court addressed the "intersection" between Penal Code section 2625, granting an incarcerated parent the right to attend the disposition hearing, and Welfare and Institutions Code section 352, subdivision (b), requiring the juvenile court to deny the incarcerated parent's request for a continuance of the disposition hearing that would have allowed the parent to attend. The panel reasoned that "any conflict between section 352 and Penal Code section 2625 must be resolved in favor of section 352 and its underlying policies" (D. E. v. Superior Court, supra, 111 Cal.App.4th at p. 513), and therefore concluded, "the rights of a child to a prompt resolution of his or her dependency proceedings outweigh any right of an incarcerated parent to be present at those proceedings" (id. at p. 506).

3. The Standard for Denying a Parent's Request for Self-representation

(4) While this case does not present a direct conflict between two statutory mandates, D. E. v. Superior Court is applicable because it teaches that in dependency proceedings, a parent's statutory rights, including the right to self-representation, must always be weighed against the child's right to a prompt resolution of the dependency proceeding. The juvenile court must consider this right in deciding whether to accept a parent's waiver of counsel and request for self-representation. Thus, the juvenile court has discretion to deny the request for self-representation when it is reasonably probable that *926 granting the request would impair the child's right to a prompt resolution of custody status or unduly disrupt the proceedings. A parent's disruptive behavior may be sufficient to deny a request for self-representation, but it is not necessary. If it is reasonably probable that granting a parent's request for self-representation will lead to undue delay in the proceedings that would impair the child's right to a prompt resolution of custody, the juvenile court has discretion to deny the request regardless whether the parent has ever behaved disruptively.
This standard is consistent with the one a trial court applies in considering a criminal defendant's constitutional right of self-representation once the defendant has chosen to proceed to trial represented by counsel.[1] In People v. Windham (1977) 19 Cal.3d 121, 128-129 [137 Cal.Rptr. 8, 560 P.2d 1187], the Supreme Court held: "[O]nce a defendant has chosen to proceed to trial represented by counsel, demands by such defendant that he be permitted to discharge his attorney and assume the defense himself shall be addressed to the sound discretion of the court. When such a midtrial request for selfrepresentation is presented the trial court shall inquire sua sponte into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request." (Second italics added.)

4. The Standard Applies Regardless When the Parent Makes the Request

(5) The juvenile court has discretion to deny a parent's request for self-representation regardless at which stage in the proceedings the request was made. The parent's right to self-representation, unlike a criminal defendant's, is statutory, not constitutional, and therefore must be balanced against other rights, including the child's right to a prompt resolution of custody. The child's right to a prompt resolution of custody exists and must be respected at every step of the juvenile dependency proceedings. Accordingly, while "[a] parent may waive counsel at any point" (Angel W., supra, 93 Cal.App.4th at p. 1083), at any point at which the waiver of counsel and request for self-representation are made, the juvenile court must consider their effect on the child's right to a prompt resolution of the dependency proceedings.
*927 In criminal cases, as People v. Windham recognizes, a trial court has discretion to deny a criminal defendant's request for self-representation only when the request is made near or after commencement of trial. This temporal limitation does not translate easily to juvenile dependency proceedings, which could involve several evidentiary hearings, each amounting to a "trial."

B. The Juvenile Court Did Not Abuse Its Discretion Under the Relevant Standard.

(6) Here, the juvenile court did not abuse its discretion by denying Father's request for self-representation.[2] Although, as the juvenile court observed, Father was very demanding of counsel, Father's conduct was not disruptive of courtroom proceedings. Yet, the juvenile court had ample evidence showing that granting Father's requests for self-representation would unduly delay the dependency proceeding.
When Father requested self-representation on November 29, 2007, the juvenile dependency proceedings had been going on for over a year. Following the Marsden-type hearing on November 29, the juvenile court expressed concern over delays in resolving the matter: "I do want you to understand that these cases have a certain time line that they are required to proceed under. In this case we are more than a year, I believe, into this case. That's way past the time that it should have gone to trial." The court continued: "We need to have the trial in this matter so I can listen to the witnesses and make a decision about ... what I believe is or isn't true. That's for the benefit of you and the child and the entire family. [¶] The longer I put this off, the more uncertainty there is. It's already gone on way too long."
Father had resisted complying with a court order requiring him to provide documentation of health problems to support his requests for continuances. He had delayed returning A.M.'s passport and personal items, and for a year resisted a court order to return them. During the Marsden-type hearing on November 29, 2007, the juvenile court listened patiently to Father's lengthy statements that often digressed into irrelevant matters, and to Father's request for an out-of-state attorney. The court could anticipate Father would defend himself in the same way, causing significant delay.
Father renewed his request for self-representation on December 17, 2007, after days and days of testimony and over a year after the detention hearing *928 on November 27, 2006. When making his renewed request, Father stated, "we still have quite a way to do what needs to be done concerning this case." Father asserted his counsel needed "close to a year" to prepare the case. His counsel stated, "the way [Father] wants to handle the case, it would take probably ten hours a week for the next year before he would be satisfied that the case would be handled to his liking.... [¶] ... I expressed to [Father] the way you want me to handle the case probably would take me a year to present the case as you would like." The comments, even taking exaggeration into account, support the conclusion that Father's self-representation would unduly delay resolution of the dependency proceedings that already had gone on for over a year.
Thus, it was reasonably probable that granting Father's requests for self-representation would lead to a significant delay, and such delay would impair A.M.'s right to a prompt resolution of custody status.

II. Any Error in Denying Father's Requests to Represent Himself Was Harmless.

Because a parent's right to self-representation in a juvenile dependency proceeding is statutory, rather than constitutional, our review of the assertion of the right to self-representation is evaluated under the harmless error standard of People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (Angel W., supra, 93 Cal.App.4th at p. 1085.) Under that standard, we ascertain whether it appears reasonably probable Father would have obtained a more favorable result if the juvenile court had granted his requests for self-representation.
We conclude any error in denying Father's requests for self-representation was harmless. The case hinged on witness credibility: As the juvenile court stated, this case was "a simple matter of credibility." The juvenile court found A.M. and Mother to be credible, and found Father was not credible when he testified he had allowed A.M. to contact Mother. The court commented on A.M.'s testimony, "I noticed the fear when she talked about describing these events was evident in her demeanor and face."
Father argues he had superior knowledge of the case and therefore could have ferreted out the lies and fabrications that were not being challenged due to "poor question form, and lack of preparation and knowledge of the case." But Father was represented by competent counsel, and it is not reasonably probable Father could have conducted better cross-examination of witnesses. Father has never explained what additional information he believes he could have elicited from the witnesses, and does not describe what he would have done or what evidence he would have offered that would have made a result more favorable to him reasonably probable.
*929 Father had the opportunity to present his side of the story. He testified at length. He denied hitting A.M. with a book, slapping her, and preventing her from having contact with Mother, and asserted A.M. and Mother knew he was bringing A.M. to the United States. He denied any domestic violence against Mother. Father testified he disciplined A.M. "[v]ery, very nicely" and avoided punishing his children. Because Father testified before his November 29, 2007 request for self-representation, granting the request would not have made Father's testimony more credible.

DISPOSITION
The jurisdiction and disposition orders are affirmed.
Moore, Acting P. J., and Ikola, J., concurred.
NOTES
[1] A criminal defendant does not have a constitutional right to self-representation on direct appeal from a criminal conviction. (Martinez v. Court of Appeal of Cal., Fourth Appellate Dist. (2000) 528 U.S. 152 [145 L.Ed.2d 597, 120 S.Ct. 684].)
[2] County counsel argues Father's request for self-representation made on November 29, 2007, was untimely because it was made six months since the first request and a year after A.M. had been taken into protective custody. The request was not untimely because, as stated in Angel W., supra, 93 Cal.App.4th at page 1083, "[a] parent may waive counsel at any point."