Filed 11/25/14  In re K.B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B256490 (Super. Ct. No. J069531) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,    Plaintiff and Respondent, v. W.H.,    Defendant and Appellant. | |

K.B.'s father W.H. appeals an order denying his request for presumed father status, denying his request for reunification services, and terminating his parental rights. (Welf. & Inst. Code, §§ 366.26, 388.)  He contends the trial court abused its discretion when it denied his requests and violated his statutory and due process rights because it proceeded with the jurisdiction and disposition hearing in his absence and did not conduct a separate hearing on his request for presumed father status.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

K.B.'s mother used methamphetamine, amphetamine, and heroin during her pregnancy.  W.H. also has a history of substance abuse.  He and mother were arrested during the pregnancy for being under the influence of methamphetamine.  W.H. remained

in custody for probation violations when K.B. was born. The Ventura County Human Services Agency (HSA) removed K.B. from her mother at birth and placed her with the prospective adoptive parents who previously adopted her half-sibling.

W.H.'s lengthy criminal history includes arrests for exhibiting, possessing, and brandishing firearms; violating domestic violence restraining orders; assault with a firearm; first degree robbery; and threats with intent to terrorize, among other things. He has had one supervised contact with K.B.

After K.B.'s removal, HSA filed a dependency petition based on the inability of W.H. and mother to care for K.B. due to their substance abuse, W.H.'s incarceration, and mother's failure to address issues that led to removal of the half-sibling. On August 12, 2013, the trial court ordered K.B. detained. W.H. was in custody in Los Angeles and did not appear for the detention hearing.

Three weeks later, a social worker met with W.H. at the Los Angeles County jail and encouraged him to enroll in the substance abuse treatment program. W.H. denied having any problem with substance abuse. He enrolled in a parenting class, but not a substance abuse class. The social worker provided him with contact information and told him she would accept his collect telephone calls.

The trial court conducted an uncontested jurisdiction and disposition hearing on September 10. W.H. was in custody and did not appear. The Los Angeles County Sheriff's Department declined HSA's request to transport him. The trial court appointed counsel to represent W.H. for the issue of paternity. Mother contested HSA's recommendation to bypass services to her, and the court set the matter for a hearing on September 26.

HSA filed a report before the hearing in which it recommended bypassing services to both W.H. and mother. As to W.H., it recommended that the trial court bypass services to him, even if he were determined to be the presumed father, based on his history of violent felonies, lack of a relationship with K.B., and incarceration. If released from Los Angeles County jail, W.H. was expected to be transported to Ventura County jail

2

pursuant to a hold for warrants arising from pending felony charges for robbery and unlawful firearm activity.

On October 2, the trial court conducted a hearing. It sustained the petition and bypassed services to mother. It set a paternity hearing for November 11. At the paternity hearing, W.H.'s counsel appeared and reported that W.H. did not respond to a letter in which counsel explained the issues, although counsel included a return envelope. The court declined counsel's request to relieve him. Counsel indicated he would send another letter.

The social worker sent a paternity form to W.H. but did not receive it back from him. She advised the trial court that the initial mailing was returned as undeliverable, but she re-sent it to the correct address. W.H. signed and returned the form in November.

On January 19, 2014, W.H. was released from jail. On January 27, he appeared with counsel for a section 366.26 hearing. Mother contested the section 366.26, and the trial court set it for a hearing on February 13. In the interim, W.H. filed a request to modify the court's orders to grant him reunification services, based on the changed circumstance of his release from incarceration and his statement that he did not timely receive mail when he was in jail. (§ 388.)

On February 13, the trial court ordered a paternity test. It set the sections 388 and 366.26 hearings. On April 5, genetic testing established that W.H. is the biological father of K.B.

The trial court heard testimony concerning the request for presumed father status and the sections 388 and 366.26 matters on April 22. K.B. was eight months old. W.H. was awaiting trial on felony robbery and firearm offenses for stealing heroin and firing a gun near a woman's head.

At the hearing, W.H. testified that he did not receive any paperwork from the social worker "until almost the end. And in between I think I got something but I filled [it] out and sent [it] back. But I didn't get it until it was a lot later than it was on the actual papers." He got the "Statement Regarding Parentage" close to the date he signed it, November 5. He received a letter from counsel, "but it was also a lot later than it was

3

actually dated." Two or three social workers visited him in jail. W.H. testified he loves his daughter and believes he is capable of caring for her. He lives with his parents and has a full-time construction job.

W.H. first contacted the social worker to request a visit on March 13, three months after his release. He testified that he tried to contact her sooner, but did not know which social worker to contact and was given several different names. He had one visit with K.B. on April 4. He had to decline an April 10 visit in order to appear in court on his Ventura criminal case.

The social worker testified that on October 8, 2013, she personally gave W.H. her contact information with his appointed counsel's contact information. W.H. did not contact her until after his release. She testified that the foster parents followed through on all appointments and are committed to K.B.'s medical regimen. K.B. has medical and developmental issues arising from prenatal drug exposure. The foster parents expressed interest in adopting K.B. from the time she was moved to their home. K.B. is doing well and is attached to her foster parents from whom she seeks comfort and support.

W.H.'s counsel argued that the failure to transport W.H. to hearings during his incarceration inhibited his ability to establish a relationship with K.B., and K.B.'s best interests would be served by developing a relationship with her biological father. HSA argued that visitation would not be in K.B.'s best interest because of W.H.'s lack of relationship with her, his criminal history, and the pending charges.

The trial court declined W.H.'s request to find him to be the presumed father because there was no evidence that he was present at K.B.'s birth, held her out as his own, or had any contact other than a single visit. The court found that W.H.'s release from custody was not a sufficient change of circumstance to warrant relief under section 388. It acknowledged that incarceration alone does not justify termination of parental rights, but concluded that reunification services would not be in K.B.'s best interest based upon her young age, removal from parents since birth, and the lack of a relationship between father and child. It determined by clear and convincing evidence that K.B. is adoptable.

4

## DISCUSSION

### Presumed Father Status

Substantial evidence supports the trial court's finding that W.H. is not a presumed father. (*S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023, 1031 [substantial evidence review].) Only a presumed father is entitled to reunification services. (*In re Julia U.* (1998) 64 Cal.App.4th 532, 540.) A biological father may become a "presumed" father by demonstrating that he promptly asserted parental responsibility. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1055.) We consider his conduct before and after the child's birth, such as whether he publicly acknowledged paternity, paid pregnancy and birth expenses if he was able to do so, and whether he promptly took legal action to obtain custody of the child. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 583.) W.H. testified that he knew about K.B.'s birth and whereabouts, but he offered no evidence of early efforts to assert parental responsibility. Whether or not he received mail in jail, he had the ability to contact the mother, the social worker, or his counsel by telephone. He offered no evidence that he did so. The trial court afforded him a full opportunity to present evidence in support of his request for presumed status and did not abuse its discretion when it denied his request.

### Request for Reunification Services Based on Changed Circumstances

The trial court did not abuse its discretion when it denied W.H.'s petition to modify its order to allow reunification services. A parent may petition the juvenile court to change its orders based on a showing that changed circumstances exist and the proposed change is in the best interest of the child. (Welf. & Inst. Code, § 388, *In re Andrew L.* (2004) 122 Cal.App.4th 178, 190; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Although W.H.'s circumstances changed when he was released from custody, that change was not material given the absence of any changes to his substance abuse problems or continuing criminal lifestyle. He offered no evidence of rehabilitation or reform. Moreover, there was no evidence that K.B.'s best interests would be served by reunification services. K.B. was thriving in a stable home with her half-sibling and foster parents to whom she was attached. W.H. made one effort to visit her three months after

5

his release and did not otherwise demonstrate that she would benefit from contact with him.

## Due Process

The trial court did not violate W.H.'s due process rights by proceeding with the jurisdiction and disposition hearing in his absence.  At the time of the disposition and jurisdiction hearing, W.H. was an alleged father.  He was represented by counsel.  (*In re Jesusa V.* (2004) 32 Cal.4th 588, 626.)  Even if W.H. had a statutory right to be present at the hearing pursuant to Penal Code section 2625, his absence was harmless because it was not reasonably probable that he would have been determined to be a presumed father had he been present.  (*Jesusa V.*, at p. 625; *D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 505-506.)

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

6

Bruce A. Young, Judge

Superior Court County of Ventura

_____


Grace E. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Alison L. Harris, Assistant County Counsel, for Plaintiff and Respondent.