Filed 2/6/15  In re G.M. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**In re G.M. et al., Persons Coming Under the Juvenile Court Law.**

| | |
|---|---|
| **SOLANO COUNTY HEALTH AND HUMAN SERVICES,** | **A142664** |
| **Plaintiff and Respondent,** | **(Solano County Super. Ct. Nos. J41633,** |
| **v.** | **J41634)** |
| **ARCHIE M.,** | |
| **Defendant and Appellant.** | |

_____/

Presumed father Archie M. (father) appeals from the juvenile court's termination of his parental rights as to his daughters following a Welfare and Institutions Code section 366.26 hearing (.26 hearing).[1]  He contends the termination order must be reversed because "he was denied his right to be present in person" at the .26 hearing.

We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We recite only those facts relevant to the issues raised by father on appeal.

---

[1]     Unless noted, all further statutory references are to the Welfare and Institutions Code.  A.M. (mother) is not a party to this appeal and is mentioned only where necessary.

1

*Detention, Jurisdiction, and Disposition*

Mother and father have two children: G.M., born in 2009, and Z.M., born in 2012 (collectively, children). While pregnant with Z.M., mother lived in a "'drug house'" with G.M. Z.M. tested positive for methamphetamine, amphetamine, and marijuana at birth. A few days later, the Solano County Health and Human Services Department (Department) filed a petition alleging the children came within section 300, subdivision (b) because mother and father had "an untreated substance abuse problem and drug related criminal behavior" interfering with their ability "to provide safe and adequate care for" the children.

The section 300 petition also alleged father used methamphetamine and allowed G.M. "to live in hazardous living conditions" where methamphetamine and marijuana were used "in her presence." When the Department filed the petition, father was incarcerated for possession of a methamphetamine pipe and was struggling to "maintain[ ] sobriety as well as safe and stable housing." He had been arrested numerous times and had a lengthy criminal history. Father was released from jail in early September 2012.

The court detained the children and placed them with two different parental relatives.[2] Father did not appear at the combined jurisdictional and dispositional hearing and the court continued the case as to him. When father did not appear at the continued hearing, his attorney "object[ed] and submit[ted]" on jurisdiction and disposition. The court adjudged the children dependents of the court (§ 300, subd. (b)) and determined by clear and convincing evidence returning them to parental care would cause substantial danger to their physical health. The court ordered reunification services, random drug tests, and supervised visits for both parents.

*Six-Month Review Hearing*

The Department recommended terminating reunification services for both parents and setting a .26 hearing. According to the Department, father was "homeless . . . [and]

---

[2] Father told the social worker he "wanted his children placed with" their paternal aunts, even though "his children will be separated."

2

largely out of compliance with his case plan responsibilities." He had not participated in required parenting classes and failed to "maintain[ ] regular contact" with the social worker. As the Department explained, father had "been largely absent during the review period. He has made no effort in meeting the case plan objectives and has not participated in any of the reunification services being offered to him. [He] has not mitigated the issues that brought him to the attention of the Court." The Department opined there was not a substantial probability the children could be returned to him "in the next six months" and concluded it was "not in the children's best interest to delay their permanency."

Father did not appear at the May 2013 six-month review hearing and his counsel "object[ed] and submit[ted]." The court granted the Department's section 388 petition to terminate reunification services for both parents; the court set a .26 hearing for September 2013. Father was arrested in July 2013 "for an outstanding warrant . . . for robbery and assault with a deadly weapon or instrument, both felony charges" (Pen. Code, §§ 211, 245) and was served with notice of the .26 hearing in jail.

*.26 Hearing*

The Department recommended terminating parental rights. It opined the children were adoptable and their paternal aunts were willing to adopt them. The Department noted father had "not made any effort to participate or engage in reunification services" and had not "maintained consistent contact with the children or with the Department." Father had been incarcerated "two felony charges" since July 2013. Mother believed father "support[ed] . . . the permanent plan of adoption for his daughters with his sisters as he trusts his sisters to take care of his daughters. . . . [Father] was the one that arranged for the children to be placed with the paternal aunts."

The court continued the .26 hearing to March 2014. Father did not appear at the date set for the .26 hearing and his attorney requested "a contested hearing" and a five- or six-week continuance to "file a removal order for him to be transported[.]" The court continued the hearing to April 2014 and issued a removal order directing the warden to produce father at the .26 hearing. The Sacramento County Sheriff's Department

3

(Sheriff's Department) "refused to honor" the removal order because of father's pending criminal case. The court continued the .26 hearing to June 2014. The Sheriff's Department refused to transport father to the juvenile court until his criminal case was concluded and the court continued the .26 hearing a fourth time — to July 2014 — and issued another removal order directing the jail warden to produce father for the .26 hearing.

The Sheriff's Department again refused to comply with the removal order and the Department's counsel suggested father appear by telephone, explaining: "although he has a right to be here, after the . . . Court endeavors to remove him multiple times, . . . don't hold up the [.26 hearing] in perpetuity when the client is not being transported. [¶] . . . [M]y thought was if we could arrange . . . to have [ ] father . . . appear by telephone." A few days later, father appeared at the .26 hearing by telephone. His attorney made a "last pitch effort to continue the matter so that . . . [ ] father could appear . . . personally, after he has resolved his [criminal] case." The court denied the continuance request and held the .26 hearing. Father's counsel did not present any evidence. Instead, counsel objected to the termination of father's parental rights, claiming father had maintained a relationship with the children before he was incarcerated. At the conclusion of the .26 hearing, the court terminated parental rights and ordered adoption as the children's permanent plan.

## DISCUSSION

Father contends he was entitled to personally attend the .26 hearing pursuant to Penal Code section 2625. Penal Code section 2625 provides that when an incarcerated parent has expressed his desire to attend a .26 hearing and the juvenile court has issued an order for the production of that parent, the court may not proceed "without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by [an official] stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding." (Pen. Code, § 2625, subd. (d); see also Cal. Rules of Court, rule 5.530(f).)

4

Here, the court repeatedly tried to secure father's presence at the .26 hearing, but the Sheriff's Department refused to produce him. Jail authorities in other counties often "simply refuse to obey a juvenile court's order directing that the sheriff remove and transport the prisoner-parent from the county jail to the juvenile court for the scheduled hearing." (*In re Iris R.* (2005) 131 Cal.App.4th 337 (*Iris R.*).) We do not condone "[t]his habitual and willful disobedience of a court order," which "undermines a parent's potential statutory and constitutional rights [and] fosters disrespect for the judiciary and its lawful orders." (*Id.* at p. 343.) We conclude, however, that any error in proceeding with the .26 hearing without father's physical presence was harmless.[3] (*In re Jesusa V.* (2004) 32 Cal.4th 588, 625 (*Jesusa V.*).) As we have stated, father appeared at the .26 hearing by telephone, but he did not testify and his attorney presented no evidence. Given father's current incarceration, his uncertain release date, past history of arrests and convictions, persistent long-term substance abuse issues, and his complete failure to comply with his case plan, there is no reasonable likelihood of an outcome more favorable to him had he been physically present at the .26 hearing.[4] (*Jesusa V.,* at p. 626.) There was no evidence supporting the beneficial parent child exception to adoption (§ 366.26(c)(1)(B)(i)), nor any evidence suggesting the children were not adoptable.

Father participated in the hearing by telephone and we conceive of nothing he could have contributed at the .26 hearing by his physical presence that would have changed the outcome, and we can "say with confidence that '[n]o other result was possible' even if he had been present. [Citation.]" (*Jesusa V., supra,* 32 Cal.4th at p. 626; see also *D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 513 [error in conducting dispositional hearing without father's presence was harmless]; *Iris R.*, *supra,*

---

[3]     We decline father's suggestion to deem the error structural. Our Supreme Court has held a violation of Penal Code section 2625 is not structural, and we are bound to follow it. (*Jesusa V., supra,* 32 Cal.4th at pp. 624-625; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)

[4]     Father told his attorney he wanted "mother to get extended reunification services[.]"

131 Cal.App.4th at p. 343 [any error in holding jurisdictional hearing in mother's absence was harmless].)  Having reached this result, we need not address father's argument that the court abused its discretion by refusing to grant a further continuance to enable him to personally attend the .26 hearing.

DISPOSITION

The order terminating father's parental rights is affirmed.


_____
Jones, P.J.



We concur:


_____
Needham, J.


_____
Bruiniers, J.