Filed 1/16/14  Conservatorship of Richard R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Conservatorship of the Person of RICHARD R. | D063837 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Petitioner and Respondent, | (Super. Ct. No. MH98305) |
| v. | |
| RICHARD R., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Objector and Appellant.

Thomas E. Montgomery, County Counsel, and George Seikaly and Christina I. Vilaseca, Deputy County Counsel, for Petitioner and Respondent.

Richard R. appeals from a judgment reestablishing conservatorship of his person under the Lanterman-Petris-Short Act (LPS Act or Act). (Welf. & Inst. Code, § 5000 et seq.) He contends the court violated Probate Code section 1825, subdivision (a),[1] which mandates that he be "produced at" his conservatorship reestablishment hearing, when it denied his request to appear in person and held the hearing with Richard participating via videoconference from Santa Cruz, California. He further contends the court's ruling violated his due process rights under the United States Constitution. We conclude any error was harmless and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I. *Background Facts*

Richard is an adult male in his mid-50's who has suffered from mental illness since he was 15 years old. His mental illness history includes schizophrenia, psychosis, and chronic paranoia. He has been hospitalized at least 28 times since 1992 and has demonstrated poor compliance with treatment plans when he is outside of a structured and locked environment. Richard is in denial of both his mental condition and his need for medication and has indicated that he will not continue taking his medication once he is released from a locked facility.

Richard's mental illness manifests itself in several different ways. He experiences illogical thoughts, confusion about the days of the week, delusions, time distortion, hears radio broadcasts from the Federal Bureau of Investigation and Central Intelligence

---

[1]    Unless otherwise indicated, all further statutory references are to the Probate Code.

2

Agency in his head, and is assaultive against others. As a result of his mental illness and its manifestations, he has had difficulty caring for himself, has missed meals and has to be reminded to perform routine activities of daily living.

As a result of the above, Richard has been under continuous conservatorship since May 26, 2005. Since 2008, he has lived predominantly in locked mental health institutions such as the Metropolitan State Hospital and 7th Avenue Center in Santa Cruz, where he currently resides. However, in or around June 2012, Richard lived in Opal Cliff Residential Center (Opal Cliff), a residential board and care facility in Santa Cruz. Within a few months, Richard assaulted a caregiver who tried to administer his medication and was admitted to an acute psychiatric hospital as a result. When he returned to Opal Cliff, he assaulted the center's administrator by biting him, was again admitted to an acute care hospital, and was then placed at the 7th Avenue Center, where he has been since.

On January 24, 2013, the San Diego County Health and Human Services Agency, through the Office of the Public Conservator (the public conservator), filed a petition to reestablish conservatorship of Richard's person on the basis that he remained gravely disabled and was unable to provide for his basic needs of food, clothing, and shelter. The public conservator sought to place Richard in an unlocked, open treatment facility and to impose various disabilities upon him.

II. *Procedural Background*

Since 2005, the San Diego County Public Defender and public conservator have operated under an understanding that allows for proposed conservatees who are

3

physically outside San Diego County to appear at hearings by videoconference. However, on March 19, 2013, Richard's counsel objected and requested Richard be physically present at the hearing to reestablish his conservatorship. After the parties briefed the issue and the court heard argument, the court denied Richard's request.

On April 9, 2013, the court held a hearing on the public conservator's petition to reestablish conservatorship of Richard, who appeared by videoconference as the court previously ordered. Based on Richard's testimony, a "Medical Recommendation & Declaration for Reestablishment of Conservatorship" signed by two psychiatrists in Santa Cruz, and testimony from the public conservator's staff forensic psychologist,[2] the court found beyond a reasonable doubt that Richard continued to be gravely disabled, reappointed the public conservator as conservator of his person, and ordered him to remain in a closed and locked treatment facility until at least April 9, 2014.

On appeal, Richard contends the court's denial of his request to be physically present at the hearing violated his due process rights under the Constitution and his statutory rights under section 1825, subdivision (a).

---

[2] The public conservator's forensic psychologist, Alma Carpio, Psy.D., interviewed Richard via videoconference and reviewed a statement of facts prepared by the public conservator's office. Dr. Carpio's recommendations largely aligned with the two psychiatrists in Santa Cruz, except that she recommended Richard be confined to a closed and locked facility while the Santa Cruz doctors recommended Richard be placed in an open, intermediate care facility. Dr. Carpio so recommended in part because Richard had "a significant history of noncompliance with medication when placed at lower levels of care."

DISCUSSION

I. *Judicial Notice*

As an initial matter, the public conservator asks us to take judicial notice of two documents. The first document is the public conservator's general policies and procedures for placing conservatees outside of San Diego County. The second document is a purported excerpt from a countywide memorandum prepared in 2006 by a manager who worked at the public conservator's office. We deny the public conservator's request for judicial notice.

The public conservator contends we may take notice of these documents under Evidence Code section 452, subdivision (h), which allows judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." However, we need not take notice of matters that were not presented to the trial court. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379.)

Here, the record does not establish that the public conservator submitted either document in support of its briefing before the trial court. Nor does the public conservator contend it previously proffered these documents to the trial court. Accordingly, we decline to take judicial notice of the documents the public conservator presents for the first time on appeal.

II. *Probate Code Section 1825*

Richard contends section 1825's unambiguous language required his physical presence at the reestablishment hearing. The public conservator contends section 1825 is

ambiguous and allows for conservatees' virtual presence at hearings using videoconferencing technology.  Without deciding whether the trial court erred, we conclude that any assumed error was harmless.

The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled.  (Welf. & Inst. Code, § 5150 et seq.)  The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled (Welf. & Inst. Code, § 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement (*id.*, § 5350.1).  As defined by the Act, a person is " 'gravely disabled' " if, as a result of a mental disorder, the person "is unable to provide for his or her basic personal needs for food, clothing, or shelter."  (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).)  Although the Act makes no express mention of a specific requirement for the presence of a proposed conservatee at a hearing to establish a conservatorship of the person, it mandates that LPS conservatorships shall be established pursuant to the procedure set forth in the Probate Code.  (Welf. & Inst. Code, § 5350.)  In turn, Probate Code section 1825, subdivision (a) provides that "[t]he proposed conservatee shall be produced" at the hearing to establish a conservatorship, subject to three exceptions that do not apply here.

We review the trial court's interpretation and application of section 1825 de novo. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142.)  However, error in the denial of a statutory right is subject to the harmless error analysis of *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Epps* (2001) 25 Cal.4th 19, 29; *D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 513-514.)  Before any judgment can be reversed for error under state

6

law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson,* at p. 836.)

Here, without deciding whether proposed conservatees in LPS proceedings have a statutory right under section 1825 to be physically present at conservatorship hearings, we conclude that any violation of the right in this case was harmless. On the record before us, the evidence of Richard's continued grave disability was overwhelming. At the time of the reestablishment hearing, he had been under conservatorship for several years, two physicians in Santa Cruz opined that he continued to be unable to care for himself, and a third doctor opined the same and testified as the public conservator's witness. Richard also did not present any credible evidence that contradicted his continued gave disability. Moreover, Richard had physically assaulted two persons during his then-most-recent conservatorship period when he briefly resided at a lower level care facility. Other compelling evidence before the court included his history of institutionalization and conservatorship, continuing diagnosis and resulting manifestations, and his stated desire to discontinue his medications. Thus, even if Richard had been physically present at the hearing, he could not have obtained a more favorable result.

III. *Due Process*

In conservatorship cases, conservatees are entitled to certain due process protections, and "we balance three factors to determine whether a particular procedure or absence of a procedure violates due process: the private interests at stake, the state or public interest, and the risk that the procedure or its absence will lead to erroneous decisions." (*Conservatorship of John L.*, *supra*, 48 Cal.4th at p. 150.) In reviewing constitutional error in civil commitment proceedings, we apply the test in *Chapman v. California* (1967) 386 U.S. 18 that "federal constitutional error is reversible unless shown to be harmless beyond a reasonable doubt . . . ." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1194.)

Here, we do not decide whether videoconferencing in general or as applied in this case violated due process. For the reasons explained above, any error in denying Richard his due process rights at the reestablishment hearing was harmless beyond a reasonable doubt. In light of the overwhelming evidence at the hearing, we have no doubt the court would have reestablished conservatorship over Richard had he been physically present.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

8